UNITED STATES *v.* A & P TRUCKING CO. ET AL.

No. 32.   Argued October 20, 1958.—Decided December 8, 1958.

*Ralph S. Spritzer* argued the cause for the United States.   With him on the brief were *Assistant Attorney General Anderson, Beatrice Rosenberg* and *Jerome M. Feit.*

*Anthony J. Cioffi* argued the cause for appellees.   With him on the brief was *August W. Heckman.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

This case raises issues similar to those involved in *United States* v. *American Freightways Co.,* 352 U. S. 1020, where a dismissal of an information charging a partnership entity with violations of 18 U. S. C. § 835 was affirmed by an equally divided Court.

Appellees, two partnerships, were charged, as entities, in separate informations with violations of 18 U. S. C. § 835, which makes it criminal knowingly to violate Inter-

state Commerce Commission regulations for the safe transportation in interstate commerce of "explosives and other dangerous articles." Appellee A & P Trucking Company was also charged with numerous violations of 49 U. S. C. § 322 (a) (§ 222 (a) of the Motor Carrier Act. of 1935).[1] The District Court dismissed, on motion, the informations on the ground that a partnership entity cannot be guilty of violating the statutes involved. The Government appealed directly to this Court under the Criminal Appeals Act, 18 U. S. C. § 3731, and we noted probable jurisdiction. 356 U. S. 917. For reasons set forth below we hold that the informations were erroneously dismissed.

49 U. S. C. § 322 (a), the comprehensive misdemeanor provision of the Motor Carrier Act, provides that "any person knowingly and willfully violating any provision of this chapter [Part II of the Interstate Commerce

---

[1] The information as to appellee A & P Trucking Company charged in one count an offense under 18 U. S. C. § 835 through the transportation by truck of chromic acid without the markings or placardings prescribed by 49 CFR § 77.823 (a). It charged in 34 other counts offenses under 49 U. S. C. § 322 (a), consisting of failure to comply with 49 CFR § 191.8, which prescribes physical examinations and certificates for drivers of trucks (one count), violation of 49 CFR, 1958 Cum. Pocket Supp., § 193.95 (a), which requires that common-carrier trucks be equipped with fire extinguishers (one count), and violation of 49 U. S. C. § 306 (a), which forbids the operation of a common-carrier truck in interstate commerce without a certificate of convenience and necessity (32 counts). The information as to appellee Hopla Trucking Company charged two violations of 18 U. S. C. § 835, in that Hopla shipped methanol, a flammable liquid, without properly marking or placarding the truck as required by 49 CFR § 77.823 (a), and without its driver having in his possession a paper showing the prescribed labels required for the outside containers of the methanol as required by 49 CFR § 77.817.

Subsequent to the filing of the information against A & P Trucking Company, 49 U. S. C. § 322 (a) was amended to increase the fines provided for its violation. See 49 U. S. C. (Supp. V) § 322 (a).

Act], or any rule, regulation, requirement, or order [of the Interstate Commerce Commission] thereunder, or any term or condition of any certificate, permit, or license, for which a penalty is not otherwise herein provided, shall, upon conviction thereof, be fined . . . ." The Motor Carrier Act also contains its own definition of the word "person": "The term 'person' means any individual, firm, *copartnership,* corporation, company, association, or joint-stock association; . . . ." (Italics supplied.) 49 U. S. C. § 303 (a).

18 U. S. C. § 835 provides that "whoever knowingly violates any such regulation [ICC regulations pertaining to the safe transport of dangerous articles] shall be fined not more than $1,000 or imprisoned not more than one year, or both; . . . ." The section makes such regulations binding on "all common carriers" engaged in interstate commerce. And 1 U. S. C. § 1, part of a chapter entitled "Rules of Construction" and in light of which § 835 must be read, provides that "in determining the meaning of any Act of Congress, unless the context indicates otherwise— . . . the words 'person' and 'whoever' include corporations, companies, associations, firms, *partnerships,* societies, and joint stock companies, as well as individuals; . . . ." (Italics supplied.) The word "whoever" in 18 U. S. C. § 835 must, therefore, be construed to include partnerships "unless the context indicates otherwise." [2]

We think that partnerships as entities may be proceeded against under both § 322 (a) and § 835. The pur-

---

[2] It is significant that the definition of "whoever" in 1 U. S. C. § 1 was first enacted into law as part of the very same statute which enacted into positive law the revised Criminal Code. 62 Stat. 683, 859 (1948). The connection between 1 U. S. C. § 1 and the Criminal Code, which includes § 835, is thus more than a token one, the very same statute which creates the crime admonishing that "whoever" is to be liberally interpreted.

pose of both statutes is clear: to ensure compliance by motor carriers, among others, with safety and other requirements laid down by the Interstate Commerce Commission in the exercise of its statutory duty to regulate the operations of interstate carriers for hire. In the effectuation of this policy it certainly makes no difference whether the carrier which commits the infraction is organized as a corporation, a joint stock company, a partnership, or an individual proprietorship. The mischief is the same, and we think that Congress intended to make the consequences of infraction the same.

True, the common law made a distinction between a corporation and a partnership, deeming the latter not a separate entity for purposes of suit. But the power of Congress to change the common-law rule. is not to be doubted. See *United States* v. *Adams Express Co.,* 229 U. S. 381. We think it beyond dispute that it has done so in § 322 (a) for, as we have seen, "person" in that section is expressly defined in the Motor Carrier Act to include partnerships. We think it likewise has done so in § 835, since we find nothing in that section which would justify our not applying to the word "whoever" the definition given it in 1 U. S. C. § 1, which includes partnerships. Section 835 makes regulations promulgated by the ICC for the transportation of dangerous articles binding on *all* common carriers. In view of the fact that many motor carriers are organized as partnerships rather than as corporations, the conclusion is not lightly to be reached that Congress intended that some carriers should not be subject to the full gamut of sanctions provided for infractions of ICC regulations merely because of the form under which they were organized to do business.[3] More particularly, we per-

---

[3] Congress has specifically included partnerships within the definition of "person" in a large number of regulatory Acts, thus showing its intent to treat partnerships as entities. See, *e. g.,* Civil Aero-

ceive no reason why Congress should have intended to make partnership motor carriers criminally liable for infractions of § 322 (a), but not for violations of § 835.[4]

It is argued that the words "knowingly" (§ 835) and "knowingly and willfully" (§ 322 (a)) by implication eliminate partnerships from the coverage of the statutes, because a partnership, as opposed to its individual partners, cannot so act. But the same inability so to act *in fact* is true, of course, with regard to corporations and other associations; yet it is elementary that such impersonal entities can be guilty of "knowing" or "willful" violations of regulatory statutes through the doctrine of *respondeat superior.* Thus in *United States* v. *Adams Express Co., supra,* in which the Adams Express Co., a joint stock association, was indicted for "wilfully" receiving sums for expressage in excess of its scheduled rates, Mr. Justice Holmes said, at pp. 389–390:

> "It has been notorious for many years that some of the great express companies are organized as joint stock associations, and the reason for the amendment hardly could be seen unless it was intended to bring those associations under the act. As suggested in the argument for the Government, no one, certainly not the defendant, seems to have doubted that the statute now imposes upon them the duty to file schedules of rates. . . . But if it imposes upon them the duties under the words common carrier as interpreted, it is reasonable to suppose that the same

nautics Act, 52 Stat. 979, 49 U. S. C. § 401 (27); Federal Communications Act, 48 Stat. 1066, 47 U. S. C. § 153 (i); Shipping Act, 39 Stat. 729, 46 U. S. C. § 801; Tariff Act, 46 Stat. 708, 19 U. S. C. § 1401 (d).

[4] The fact that § 835 provides for imprisonment, as well as fine, for its violation, whereas § 322 (a) provides only for fines, does not lead to a different conclusion. Cf. *United States* v. *Union Supply Co.,* 215 U. S. 50.

words are intended to impose upon them the penalty inflicted on common carriers in case those duties are not performed. . . .

"The power of Congress hardly is denied. The constitutionality of the statute as against corporations is established, *New York Central & Hudson River R. R. Co.* v. *United States,* 212 U. S. 481, 492, and no reason is suggested why Congress has not equal power to charge the partnership assets with a liability and to personify the company so far as to collect a fine by a proceeding against it by the company name. That is what we believe that Congress intended to do. . . ."

The policy to be served in this case is the same. The business entity cannot be left free to break the law merely because its owners, stockholders in the *Adams* case, partners in the present one, do not personally participate in the infraction. The treasury of the business may not with impunity obtain the fruits of violations which are committed knowingly by agents of the entity in the scope of their employment.[5] Thus pressure is brought on those who own the entity to see to it that their agents abide by the law.[6]

We hold, therefore, that a partnership can violate each of the statutes here in question quite apart from the participation and knowledge of the partners as indi-

---

[5] Since the two informations were held insufficient on their face, we must, for present purposes, accept as true their allegations that the offenses charged were not inadvertently committed.

[6] *Gordon* v. *United States,* 347 U. S. 909, relied on by appellees, is not to the contrary. That case held merely that *individual partners* could not be convicted of "willfully" violating the Defense Production Act of 1950 without a showing that they had knowledge of the criminal acts of their agents. Cf. *United States* v. *Dotterweich,* 320 U. S. 277. Here the Government does not seek to hold the individual partners, but only the partnerships as entities.

viduals. The corollary is, of course, that the conviction of a partnership cannot be used to punish the individual partners, who might be completely free of personal guilt. As in the case of corporations, the conviction of the entity can lead only to a fine levied on the firm's assets.

*Reversed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK, MR. JUSTICE FRANKFURTER, and MR. JUSTICE WHITTAKER concur, dissenting in part.

18 U. S. C. § 835, unlike the Motor Carrier Act, has not explicitly subjected partnerships to criminal liability, and I do not think that such liability should be implied, for we are dealing with a penal statute which should be narrowly construed.

As Chief Justice Marshall wrote in *United States* v. *Wiltberger,* 5 Wheat. 76, 95, "The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department."

With that approach we would not allow this criminal sanction to attach under 18 U. S. C. § 835. A corporation is an artificial, legally created entity that can have no "knowledge" itself and is said to have "knowledge" only through its employees. On the other hand a partnership means A, B, and C—the individuals who compose it. In this country the entity theory has not in general been extended to the partnership. Judge Learned Hand summarized the history in *Helvering* v. *Smith,* 90 F. 2d 590, 591–592. If Dean Ames had had his way, the mercantile or entity theory of the partnership would have prevailed. But those who took up the drafting of the Uniform Partnership Act after his death adhered to the common-law attitude toward a partnership—that

it is an aggregation of individuals. That is to say, the Act adopted the aggregate rather than the entity theory. And that Act is in force in about three-fourths of the States. One who combs the reports today can find cases espousing the entity theory. But they are in the minority and consciously reject the other theory. As Professor Williston has shown, the main stream of American partnership law follows the British course of treating the partnership in the pluralistic sense. The Uniform Partnership Act, 63 U. of Pa. L. Rev. 196, 208. We should therefore assume that this criminal statute, written against that background, reflects the conventional aggregate, not the exceptional entity, theory of the partnership.

We are dealing with a statute where liability depends on "culpable intent," as stated in *Boyce Motor Lines, Inc.,* v. *United States,* 342 U. S. 337, 342. The partners could not be held criminally responsible for the acts of their employees. *Gordon* v. *United States,* 347 U. S. 909. The partnership, being no more than the aggregate of the partners, should stand on the same footing, unless Congress explicitly provides otherwise. Title 1 U. S. C. § 1 defines "person" in any Act of Congress to include a partnership, "unless the context indicates otherwise." The context of 18 U. S. C. § 835 does indicate otherwise for the Act punishes only those who knowingly violate it. The aggregate theory of partnership law teaches that there can be no vicarious criminal liability where no partner is culpable.

If the rule of strict construction of a criminal statute is to obtain, 18 U. S. C. § 835 must be read narrowly to reflect the prevailing view of partnership law. If the entity theory is to be applied for the purpose of imposing criminal penalties on partnership assets, where the partners are wholly innocent of any wrongful act, it should be done only on the unequivocal command of Congress, as is the case under the Motor Carrier Act.