299 F.2d 22
 Aaron ROSENZWEIG, Complainant,
v.
GENERAL SERVICES ADMINISTRATION of the United States of America, Bernard L. Boutin, Administrator, Respondent.
 No. 676.
 United States Emergency Court of Appeals.
 Heard at Los Angeles, Cal., May 5, 1961.
 Decided December 6, 1961.
 As Amended on Denial of Rehearing January 2, 1962.
 Certiorari Denied March 19, 1962.
 
 See 82 S.Ct. 830.
 Paul Wyler, Los Angeles, Cal., with whom Joseph Henry Wolf, Los Angeles, Cal., was on the brief, for complainant.
 Maurice S. Meyer, Atty., Dept. of Justice, Washington, D. C., with whom William H. Orrick, Jr., Asst. Atty. Gen., and Frederick N. Curley, Atty., Dept. of Justice, Washington, D. C., were on the brief, for respondent.
 Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
 MARIS, Chief Judge.
 
 
 1
 The complainant, Aaron Rosenzweig, seeks a judgment setting aside and enjoining the enforcement of an order issued by the respondent, the Administrator of General Services. The order declared invalid the claims for meat subsidy filed by Central Packing Company for the months of February and March, 1945 and demanded restitution by the complainant of the amounts paid on the claims. The pertinent facts are undisputed and are as follows:
 
 
 2
 During 1944 Charles M. King, Hyman Stillman and Lou Segal entered into a partnership arrangement known as Southern California Meat Company #2, Allied in this enterprise was Southern California Meat Co., Inc., a corporation principally owned by King. Southern California Meat Co., Inc. was to slaughter cattle and Southern California Meat Company #2 was to sell the meat. It appears that Southern California Meat Company #2 charged overceiling prices on the sale of meat and due to difficulties in obtaining subsidy payments the use of Southern California Meat Company #2 was abandoned.
 
 
 3
 In place of the previous partnership arrangement, Southern California Meat Co., Inc., King, Stillman and Segal late in 1944 entered into a similar arrangement under the name of Central Packing Company.[1] The name, Central Packing Company, was that of an existing business owned by the complainant, which had a slaughtering license. The Central Packing Company had a clean meat purchasing and selling record on the basis of which Stillman, Segal, King and King's corporation, Southern California Meat Co., Inc., could claim and receive subsidy payments. During February and March, 1945, Central Packing Company filed applications with Defense Supplies Corporation,[2] pursuant to Revised Regulation No. 3,[3] for cattle slaughter subsidy payments in the aggregate sum of $143,303.40. These subsidy claims, signed by the complainant as "Owner", and paid by Defense Supplies Corporation to Central Packing Company, are the subject of this controversy.
 
 
 4
 During February 1946, Southern California Meat Co., Inc., King, Stillman and Segal were indicted in the United States District Court for the Southern District of California, Central Division, No. 18,366, for violations of and conspiracy to commit violations of the Emergency Price Control Act of 1942 and the applicable regulations promulgated thereunder. It was charged that these defendants operated under the firm names of Southern California Meat Co., Inc., Southern California Meat Company #2, and Central Packing Company, and that they shared in all gains and profits accruing from the illegal activities described in the indictment. Among the overt acts were those charging the defendants with the issuance, during February and March, 1945, of certain invoices of Central Packing Company showing that meat had been sold at overceiling prices. On July 5, 1946 all four defendants were found guilty and judgments were entered against them. The complainant, while admittedly associated in the business of Central Packing Company, was never indicted or found guilty of any connection with such activities.
 
 
 5
 On December 23, 1947 a letter-order was sent by Reconstruction Finance Corporation,[4] the agency then in charge of such matters, addressed to Central Packing Company, in care of the complainant, stating that, as the result of an investigation, its subsidy claims were being declared invalid for the periods August 1944 through April 1945. Accordingly, demand was made for reimbursement of the sum of $196,962.62, plus interest. Under dates of January 7 and 9, 1948, the complainant requested information with respect to the basis on which these claims were declared invalid. The parties treated the letter of January 9, 1948 as a formal protest against the letter-order of December 23, 1947. Under date of January 16, 1948 the complainant was advised that the case had been referred to the U. S. Department of Justice and was being handled by the Legal Division of Reconstruction Finance Corporation.
 
 
 6
 No further action was taken until May 1958 when the United States filed a civil action, No. 423-58-BH, in the United States District Court for the Southern District of California, Central Division, against King, Stillman, Segal and the complainant doing business as Central Packing Company, and Southern California Meat Co., Inc., for the recovery of the subsidy payments in question. Default judgments were entered against defendants Stillman and Segal. The action against King and Southern California Meat Co., Inc., was dismissed. The action against the complainant was dismissed without prejudice on the ground that a protest against the letter-order of December 23, 1947 was still pending. Under date of June 27, 1960 the complainant wrote General Services Administration, the Administrator of which was the successor to Reconstruction Finance Corporation,[5] seeking a determination of the pending protest and attacking the validity of the order on the ground that the complainant had not violated any applicable statutes or regulations.
 
 
 7
 Under date of August 4, 1960 the respondent informed the complainant that the claims of Central Packing Company for the period from August 1944 through January 1945 in the amount of $53,659.22 were being reinstated but that the February and March 1945 claims remained invalid because of the wilful violations of the Office of Price Administration regulations by Central Packing Company during those two months, which violations were confirmed by the criminal judgments entered against Segal and Stillman. The letter further stated that inasmuch as the Government had not been successful in its efforts to obtain restitution from Segal and Stillman of the meat subsidy payments made to Central Packing Company, and, since the complainant was a partner in Central Packing Company, demand was being made on complainant for restitution of the sum of $143,303.40, plus interest. This letter was treated by the respondent as a new order invalidating the claims and seeking recapture of the money paid to Central Packing Company, which superseded the letter-order of December 23, 1947. On August 15, 1960 the complainant protested the letter-order of August 4, 1960 pointing out that neither he nor Central Packing Company had been indicted or convicted in the criminal proceeding referred to and that there never was any determination, judicial or administrative, that Central Packing Company or the complainant himself was in wilful violation of the regulations. Correspondence subsequently passed between the complainant and the respondent in which each expressed his views in respect to the liability of Central Packing Company and the complainant for restitution of the subsidy payments in question. The complainant's protest was denied on December 7, 1960 and the validity of the letter-order of August 4, 1960 is here for review.
 
 
 8
 The interrelationship between the meat subsidy program and the price control program has frequently been discussed by this court and need not be recounted here. See Wm. Schluderberg-T. J. Kurdle Co. v. Reconstruction Finance Corp., 1948, 169 F.2d 419, cert. den. 335 U.S. 846, 69 S.Ct. 68, 93 L.Ed. 396; Earl C. Gibbs, Inc. v. Reconstruction Finance Corp., 1948, 169 F.2d 654; Merchants Packing Co. v. Reconstruction Finance Corp., 1949, 176 F. 2d 908; Evergreen Meat Co. v. Reconstruction Finance Corp., 1951, 188 F.2d 368; Riverview Packing Co. v. Reconstruction Finance Corp., 1953, 207 F.2d 415. It is sufficient to recall that the purpose of the subsidy program was to give relief to the meat slaughtering industry from a rollback in the maximum prices of meat. Earl C. Gibbs, Inc. v. Defense Supplies Corporation, Em.App. 1946, 155 F.2d 525, 526, cert. den. 329 U.S. 737, 67 S.Ct. 51, 91 L.Ed. 637. In carrying out the purposes of the subsidy program, directives were given by the Economic Stabilization Director[6] to the Office of Price Administration in respect to maximum prices of meat, and to Defense Supplies Corporation, and after June 30, 1945, to its successor, Reconstruction Finance Corporation,[7] in respect to meat subsidy payments. Revised Regulation No. 3 of Defense Supplies Corporation, which governed the subsidy claims filed by Central Packing Company for February and March 1945, provided that claims should be paid on a purely preliminary basis but that Defense Supplies Corporation, and later its successor, Reconstruction Finance Corporation,[8] should have the right to require restitution of such payments upon a finding that the claims were invalid or defective.[9]
 
 
 9
 The express authority to declare subsidy claims invalid for wilful violations of OPA regulations was contained in Section 7003.10(a) of Revised Regulation No. 3 and amendments thereto.[10] That section required a determination by the Price Administrator and the others to whom the duty was subsequently delegated[11] that the subsidy applicant had wilfully violated an applicable regulation, or a certification by that officer that the subsidy applicant had been determined in a civil proceeding to have violated a substantive provision of an applicable regulation. Since there is no suggestion that the latter occurred in this case, we are concerned here only with the question of the validity of the determination by the respondent in the letter 1 order of August 4, 1960, that the Central Packing Company had wilfully violated applicable regulations. Section 7(b) (1) of Directive 41 sets out the factors upon the presence of which the officer is to base his determination of a wilful violation. Section 7003.10(a) of Revised Regulation No. 3 must be construed in conformity with Section 7(b) (1) of the directive,[12] which provides in this connection that a recommendation by the Price Administrator (or, later, the officer who succeeded him) for the permanent withholding or recapture of subsidy payments because of wilful violation of the regulations may only be made after the conviction of the subsidy applicant in a criminal proceeding involving subsidy payments for the periods in question.[13]
 
 
 10
 The complainant attacks the validity of the letter-order of August 4, 1960 on the ground that the respondent had no authority to make a determination that Central Packing Company had wilfully violated the price regulations. This argument is without merit. We have already set out the history of the coalescing in the Reconstruction Finance Corporation, and later in the respondent, of the responsibilities for both certification of price violations and recapture of subsidy payments.[14] As can be seen from the regulation and the directive, the respondent had the authority to make a determination of wilful violation and to order restitution of the subsidy payments from Central Packing Company for the periods involved in the convictions if the respondent was correct in finding that the criminal proceedings had terminated in the conviction of the subsidy applicant.
 
 
 11
 It is the complainant's contention that the criminal proceedings, in which Southern California Meat Co., Inc., King, Stillman and Segal were convicted, did not terminate in the conviction of the subsidy applicant since Central Packing Company was neither indicted nor convicted as a separate entity in those proceedings. In support of this proposition the complainant relies upon United States v. A & P Trucking Co., 1958, 358 U.S. 121, 79 S.Ct. 203, 3 L.Ed.2d 165, in which the Supreme Court held that a partnership, as an entity, may be proceeded against under certain Federal statutes quite apart from the participation and knowledge of the partners as individuals. In arriving at this conclusion, the Court considered the pertinent statutes in the light of the purposes of the law involved in that case. However, the rule of the A & P Trucking Co. case is inapplicable here. That rule does not support the proposition that in 1946 the Government was required, in the criminal proceedings for wilful violation of OPA regulations to proceed against Central Packing Company, as an entity, for the crimes allegedly knowingly committed and participated in by the partners named in the indictment. Whether the Government could have done so we do not decide. It is true that under the regulation a partnership was included in the definition of person.[15] But this was merely a shorthand method of making clear that partnerships, as such, could file and receive payment of subsidy claims under the regulation. There was no provision in the Emergency Price Control Act which required a criminal proceeding for wilful violations of OPA regulations to be brought against a subsidy-claimant partnership, as a separate entity, if the partners comprising the partnership had violated the Act in connection with the partnership business.
 
 
 12
 The respondent contends that the conviction of the individual partners must be considered a conviction of the partnership, the subsidy applicant Central Packing Company, for the purposes of Section 7(b) (1) of Directive 41. We agree with this contention. The complainant himself cites Jung v. Bowles, 9 Cir., 1946, 152 F.2d 726, which supports this view. In that case, which involved a civil action for violations of the OPA regulation, the defendants, who were co-partners, contended that liability rested on the partnership. The court, however, rejected their claim on the ground that under the law of California a partnership is not an entity distinct from its members.
 
 
 13
 The construction given Section 7(b) (1) of Directive 41 by the respondent carries out the spirit and intent of the subsidy program. For payment of subsidy was conditioned upon compliance by the slaughterer with the maximum prices applicable to his sales of meat. In Armour & Co. v. Reconstruction Finance Corporation, Em.App.1947, 162 F.2d 918, 922, this court had occasion to point out that the purpose of Section 7003.10(a) was not to penalize violators but to prevent the diversion of subsidy funds from the accomplishment of the object for which they were intended. The object was to implement the price control program by supplementing the ceiling prices to be received by slaughterers for their meat to the extent necessary to make these prices generally fair and equitable. It was obviously not in accord with that purpose to pay a slaughterer any subsidy for a period in which it had been judicially determined that he had obtained from his sales of meat amounts in excess of the ceiling prices fixed under the price control program. So to provide was not to impose a penalty but merely to deprive the slaughterer of subsidy funds to which he was not entitled.
 
 
 14
 We hold that the respondent's determination that Central Packing Company was in wilful violation of the OPA regulations is amply supported by the results of the criminal proceeding in which individual partners of the partnership, Central Packing Company, were convicted of such wilful violations and that the respondent did not err in his letter-order of August 4, 1960 in making such a determination and thereupon holding invalid the subsidy claims of Central Packing Company for February and March 1945.
 
 
 15
 The complainant earnestly urges that he should not be held personally liable for restitution of subsidy payments which the respondent contends are due and owing from Central Packing Company. The letter-order of August 4, 1960 invalidating the subsidy claims, however, does not purport to determine the complainant's liability for such restitution and the respondent concedes that he could not issue an order imposing liability for repayment upon the complainant personally. All that the letter-order of August 4, 1960 does in this connection is to assert as a matter of law that the complainant as a partner in Central Packing Company is liable for its debts, and to demand payment from him on this theory and threaten legal action if he fails to make such payment.
 
 
 16
 The complainant contends, however, that he is wholly innocent of the illegal activities of the other partners of Central Packing Company, that he did not receive any part of the subsidies in question, that as to these transactions he was not a partner, and that the respondent is seeking to hold him liable for the criminal acts of others. It may well be that these contentions of the complainant are well founded. We intimate no opinion upon their merits, however, since this court is without power to adjudicate these questions. Our jurisdiction is derived solely from the Emergency Price Control Act which authorizes us to consider the validity of regulations and orders issued under section 2 of the Act.[16] The letter-order of August 4, 1960 was such an order and, therefore, within our jurisdiction to the extent that it determined the validity of the subsidy claims of Central Packing Company, the amounts paid to it on invalid claims, and ordered restitution to be made by Central Packing Company as subsidy applicant. But when in that letter the respondent discussed the liability of the complainant to pay the Central Packing Company's restitution-debt to the Government, he entered a field in which he was not authorized by Section 2 of the Act to make an order which would be reviewable in this court and nowhere else. That part of the letter, consisting of its last three paragraphs, is, therefore, in no sense an order under Section 2 of the Act which was protestable by the complainant and reviewable by this court. The fact that the complainant did protest the entire letter of August 4, 1960 is immaterial since the protest was wholly ineffective to give this court jurisdiction to review the last three paragraphs to which we have referred. It necessarily follows that the liability of the complainant to pay the Central Packing Company's debt to the Government may be determined in an action for restitution hereafter brought by the Government against the complainant in any court having jurisdiction of the action. In such an action the complainant will have full opportunity to assert, and establish if he can, any defenses to the Government's claim against him to which he may believe himself entitled, except the validity of respondent's determination that Central Packing Company's subsidy claims for February and March 1945 are invalid[17] and that the Government is entitled to restitution for the sums paid to Central Packing Company on those claims. Since the facts admitted in this case indicate that with respect to the transactions out of which those claims arose Central Packing Company was a partnership, the court in which the restitution suit is brought may conclude after considering the applicable law that the Government is entitled to restitution from those persons who were partners with respect to those transactions if, as appears to be the case, the partnership assets were insufficient for that purpose. As we have stated, however, we are not authorized to, and do not, decide whether the complainant is one of those persons.
 
 
 17
 The complainant also raises the question of the application of the doctrine of laches on this review. It is true that this case involves ancient history. The original letter-order of invalidation dates back to December 23, 1947 and it was protested on January 16, 1948. The civil action for restitution was not brought until ten years later. The complainant says that this delay has prejudiced him in that records are lost and important witnesses have become unavailable. Again the complainant raises an issue which goes to the defense of his case.[18] Whether or not such a defense is appropriate under the circumstances is a matter upon which we do not pass and which can be raised hereafter in a restitution suit, if one is brought against the complainant. We observe, however, that the doctrine of laches is unavailable in respect to delay in the protest procedure in view of the fact that Section 203(d) of the Emergency Price Control Act of 1942, as amended,[19] provided for a judicial remedy in this court in case of unreasonable delay in administrative action upon a protest.
 
 
 18
 Since we find no error in those portions of the letter-order of August 4, 1960 which we have authority to review a judgment will be entered dismissing the complaint.
 
 
 
 Notes:
 
 
 [1]
 It is not clear from the record whether the four above named or only Stillman and Segal were partners in this business. The facts as set out above are those alleged by the complainant and which are adopted by the respondent. For purposes of this review they are assumed to be correct
 
 
 [2]
 Prior to this period and until July 1, 1945 Defense Supplies Corporation acted as the paying or disbursing agent in respect to livestock slaughter subsidies. Sec. 5d of the Reconstruction Finance Corporation Act, as amended, 15 U.S.C.A. § 606b, 6 F.R. 2972 [now 15 U.S.C.A. § 604]
 
 
 [3]
 10 F.R. 4241, effective January 19, 1945
 
 
 [4]
 Defense Supplies Corporation was dissolved on July 1, 1945, and its functions transferred to Reconstruction Finance Corporation. Act of June 30, 1945, 59 Stat. 310, 15 U.S.C.A. § 611 note. Revised Regulation No. 3, as amended, was then administered by Reconstruction Finance Corporation as the paying agent. 10 F.R. 11155
 
 
 [5]
 Reconstruction Finance Corporation was abolished and its functions with respect to the meat subsidy program were transferred to the respondent, the Administrator of General Services, effective June 30, 1957. Reorganization Plan No. 1 of 1957, 71 Stat. 647, 22 F.R. 4633, 15 U.S. C.A. § 601 note
 
 
 [6]
 During the period here involved the Economic Stabilization Director, who had been given the overriding authority over the entire subsidy program by Executive Order 9250, 7 F.R. 7871, U.S.Code Cong. Serv.1942, p. 1259, issued Directive 28, effective January 29, 1945, 10 F.R. 522, and Directive 38 on March 21, 1945, which were superseded by Directive 41, effective April 24, 1945, 10 F.R. 4494
 
 
 [7]
 Amendment 2 to Directive 41, effective January 28, 1946, 11 F.R. 1215
 
 
 [8]
 Amendment 6 to Revised Regulation No. 3, effective July 1, 1945, 10 F.R. 11155
 
 
 [9]
 Subsections 7003.9(b) and (d) of Revised Regulation No. 3, 10 F.R. 4243
 
 
 [10]
 10 F.R. 4243; 10 F.R. 8073; 10 F.R. 11153-11154
 
 
 [11]
 The authority to make such determinations ultimately was vested in the respondent, the Administrator of General Services, under the following sequence of events: The functions of the Price Administrator and the Economic Stabilization Director were transferred to the Temporary Controls Administrator by Executive Order 9809, issued December 12, 1946, 11 F.R. 14281, 50 U.S.C.A.Appendix, § 601 note. Then the functions of the Temporary Controls Administrator with respect to subsidies were transferred to Reconstruction Finance Corporation when it became successor by Executive Order 9841, effective May 4, 1947, 12 F.R. 2645, 50 U.S.C.A.Appendix, § 601 note. Finally, these functions were transferred to the respondent by Reorganization Plan No. 1 of 1957, 71 Stat. 647, 22 F.R. 4633, 15 U.S.C.A. § 601 note. Thus were coalesced in the Reconstruction Finance Corporation, and finally in the respondent, the responsibilities of both certification and payment
 
 
 [12]
 San Antonio Packing Co. v. Reconstruction Finance Corp., Em.App.1950, 182 F. 2d 614, 618
 
 
 [13]
 Amendment 11 to Directive 41, issued by the Temporary Controls Administrator effective April 8, 1947, 12 F.R. 2408
 
 
 [14]
 See footnotes 2, 4, 5, 6 and 11
 
 
 [15]
 "§ 7003.1Definitions. When used in the regulations in this part, the following terms shall have the following meanings:
 (a) `Person' means an individual, corporation, partnership, association, institution, or other business entity, or legal successor or representative of any of the foregoing." 10 F.R. 4241.
 
 
 [16]
 Section 204(d) of the Emergency Price Control Act of 1942, 56 Stat. 32, 50 U.S.C.A. Appendix, § 924(d)
 
 
 [17]
 Yakus v. United States, 1944, 321 U.S. 414, 427-431, 64 S.Ct. 660, 88 L.Ed. 834
 
 
 [18]
 See Riverview Packing Co. v. Reconstruction Finance Corp., 3 Cir., 1953, 207 F.2d 361, 366-368
 
 
 [19]
 The Act of June 30, 1944, 58 Stat. 639, added subsection (d) to section 203 of the Emergency Price Control Act of 1942, as amended, 50 U.S.C. § 923(d), 1946 Edition