**UNITED STATES of America**

v.

**LITTLE ROCK SEWER COMMITTEE and Little Rock Sanitary Sewer System.**

No. LR–CR–77–138.

United States District Court, E. D. Arkansas, W. D.

Jan. 19, 1978.

W. H. Dillahunty, U. S. Atty., Little Rock, Ark., for plaintiff.

Frank H. Cox, Little Rock, Ark., for defendant.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

On September 23, 1977, the Court held a hearing on the merits of a motion by the defendant City of Little Rock to dismiss a pending criminal information which charged the City with knowingly making or causing to be made a false statement, representation, and certification in a monthly Discharge Monitoring Report in violation of 33 U.S.C. § 1319(c)(2). At this hearing, the City of Little Rock contended that the information should be dismissed because Roland Ouelette, the employee charged with the duty of filing these reports, was under the sole supervision, direction and control of the Little Rock Sewer Committee, rather than the City of Little Rock functioning as a municipal corporation. The documentary evidence presented at this hearing substantiated this contention. Since the evidence presented at the hearing indicated that the City of Little Rock, per se, played no part in obtaining the permit, that the City had no knowledge of the contents of the Discharge Monitoring Reports, and that the City was not charged with the responsibility of submitting these reports to the Environmental Protection Agency, the Court concluded that the information should be dismissed against the City of Little Rock. The government then filed a new information charging the legal entities known as the Little Rock Sewer Committee and the Little Rock Sanitary Sewer System with the same statutory violations that were contained in the original information filed against the City of Little Rock.[1]

One of the issues which was discussed at the hearing was whether any further proceeding against the Little Rock Sewer Committee should be consolidated with the trial of defendant Roland Ouelette, who was charged with identical statutory violations. The attorney for the Sewer Committee indicated that he would not object to the consolidation, but requested that the case against the Committee be tried to the court. Thus, the Court concluded that the aforementioned cases should be consolidated and the trial of each cause bifurcated in such a manner that the charges against defendant Sewer Committee would be tried to the court at the same time the charges against defendant Ouelette were being tried to a jury.

On September 26, 1977, the Court convened the trial in this case. At the conclu-

---

1. The Little Rock Sewer Committee is composed of five individuals who are appointed by the City of Little Rock's Board of Directors, and functions pursuant to the duties and powers set forth in § 19–4103. The Little Rock Sanitary Sewer System is apparently the gener-ic term used to describe the overall entity which the Sewer Committee is charged with "supervising." See § 19–4102. Thus, the Court concludes that the information should be dismissed as to the Little Rock Sanitary Sewer System.

sion of this trial, the jury returned a guilty verdict under each of the five counts of the information against defendant Ouelette. The Court then took under advisement the decision regarding the guilt or innocence of the defendant Sewer Committee pending the filing of memoranda of law on the legal question of whether the Sewer Committee could be held criminally liable for violation of the statute in question under a theory of *respondeat superior*.

The information against defendant Little Rock Sewer Committee contains five counts which allege that on various dates the defendant "did knowingly make and cause to be made a false statement, representation and certification in the monthly Discharge Monitoring Report" in violation of 33 U.S.C. § 1319(c)(2). At the conclusion of the trial in this case, the Court was convinced beyond a reasonable doubt that defendant Roland Ouelette was guilty of violating 33 U.S.C. § 1319(c)(2) as charged in the information. This conclusion was buttressed by the jury's verdict. As indicated at the September 23rd hearing, the individual members of the Little Rock Sewer Committee clearly lacked any personal knowledge of the false statements made by defendant Ouelette. Thus, the individual Committee members could only have been prosecuted under some attenuated theory of vicarious criminal liability. However, the information does not name or seek to hold these members responsible for any individual criminal liability but, rather, names the entity known as the Sewer Committee as the defendant. Thus, the question before the Court is whether the defendant Little Rock Sewer Committee may be found guilty of violating 33 U.S.C. § 1319(c)(2) under a theory of *respondeat superior*.

■ In *United States v. Hilton Hotels Corporation*, 467 F.2d 1000 (9th Cir. 1973), one of the issues before the Court con-

cerned whether a corporation should be held criminally liable under the Sherman Act for the acts of its agents acting within the scope of their authority.[2] In concluding that the corporation should be held criminally liable for the acts of its agents, the Court stated the following:

> "The breadth and critical character of the public interests protected by the Sherman Act, and the gravity of the threat to those interests that led to the enactment of the statute, support a construction holding business organizations accountable, as a general rule, for violations of the Act by their employees in the course of their businesses. . . .

> "With such important public interests at stake, it is reasonable to assume that Congress intended to impose liability upon business entities for the acts of those to whom they choose to delegate the conduct of their affairs, thus stimulating a maximum effort by owners and managers to assure adherence by such agents to the requirements of the Act."

*Id.* at 1005. Although the legislative history surrounding the Federal Water Pollution Control Amendments of 1972 provides little real guidance, the Court concludes that the public interest protected by this legislation is like, and is as important in its area of concern as, the public interest protected under the Sherman Act. Thus, the criminal sanctions provided by § 1319 should be construed and applied with a view toward achieving the same kind of "maximum adherence" referred to by the court in *Hilton, supra*.

In *Apex Oil Co. v. United States*, 530 F.2d 1291 (8th Cir. 1976), the appellant appealed its conviction for failing to notify an appropriate agency of the United States government of a known oil spill in violation of 33

---

**2.** The defendants attempt to factually distinguish this case from the *Hilton Hotel* decision by citing "headnote 9" of the latter case, which provides the following:

> "A purpose to benefit the corporation is necessary to bring its agent's acts within the scope of his employment, for purposes of

imposing criminal liability upon the corporation because of such acts."

Of course, the headnote is not to be considered authority unless fully supported by the text of the opinion. Furthermore, factually it is clear that Ouelette's purpose was to help or benefit his employer, not himself.

U.S.C. § 1321(b)(5).[3] The underlying facts in this case reveal that during offloading operations at one of the appellant's facilities approximately ten gallons of aromatic oil spilled into the Mississippi River. Robert J. Smith, one of the appellant's employees, was in charge of the offloading and witnessed the spill, but failed to notify either the Coast Guard or the Environmental Protection Agency. The Coast Guard later traced the spill to the Apex Oil facility. On appeal, the defendant corporation argued, *inter alia*, that it lacked knowledge of the spill sufficient to support its conviction under 33 U.S.C. § 1321(b)(5). In rejecting this contention, the court stated the following:

> "The corporation is no less 'in charge' of the oil facility than is its employee [citations omitted]. Further, the knowledge of the employees is the knowledge of the corporation. See *United States v. A&P Trucking Co.,* 358 U.S. 121, 125, 79 S.Ct. 203, 3 L.Ed.2d 165, 169 (1958); *Ritchie Grocer Co. v. Aetna Casualty & Surety Co., supra,* 426 F.2d 499 (8th Cir.) at 500."

*Id.* at 1295. See also, *United States v. A&P Trucking Co.,* 358 U.S. 121, 79 S.Ct. 203, 3 L.Ed.2d 165 (1958); *United States v. Hilton Hotels,* 467 F.2d 1000 (9th Cir. 1973).

▋ Two essential elements are required to be proved in order to establish a violation of 33 U.S.C. § 1319(c)(2):

First, that the defendant made a materially false statement in a report required to be filed with the United States Environmental Protection Agency and also made a materially false statement in other records required to be maintained under its permit and under the Federal Water Pollution Control Amendments of 1972, for the months designated in the particular counts of the information.

Second, that the defendant knowingly made the materially false statement.

▋ As indicated earlier, defendant Ouelette was employed by and was under the supervision, direction and control of the Sewer Committee of the City of Little Rock. The evidence produced during the trial clearly indicated that defendant Ouelette in the regular course of his employment "knowingly" made material false statements in monthly Discharge Monitoring Reports. Because of the broad language of the court's decision in *Apex* regarding the imputation of knowledge, in a criminal case, to the corporation, that decision could arguably be cited as authority for the proposition that the knowledge of even a low echelon employee may be imputed to the corporation. This Court would have trouble with such a broad proposition. However, it need not address that issue in the factual context of this case. Defendant Ouelette was a high-level employee, indeed the Plant Superintendent of the Little Rock Sewage Treatment Plant, and, as such, was in charge of supervising the operation of the entire plant. Thus, imputation of his knowledge to the Sewer Committee, his employer, is consistent with normal agency rules and does not require reliance upon the principle enunciated in *Apex*. *Apex* is, however, *a fortiori* authority in this circuit for the conclusion which the Court reaches here. Thus, the Court concludes that the

---

**3.** The defendants attempt to distinguish the *Apex* case by arguing that Apex Oil Company is a "corporation in business for profit," while in this case there is no monetary gain which would accrue to the Sewer Committee from the acts of its agent, defendant Ouelette, in falsifying the reports in question. The Court is not persuaded by this argument. The Sewer Committee as a business entity (not the individual members of its Board) stood to benefit financially by the acts of Ouelette if in no other manner than the reduced cost of operation resulting from the failure to take those steps, and make those expenditures, necessary to operate the facility in compliance with the standards.

Furthermore, in the critical area of hiring supervisory personnel, the Sewer Committee is charged by statute with duties and powers analogous to the powers exercised by a corporate board of directors in hiring key executive employees. For example, in pertinent part § 19–4103 Ark. Stat. Ann. provides the following:

> "The Sewer Committee may employ engineers, architects, inspectors, superintendent, manager, collectors, attorneys, and such other employees as in its judgment may be necessary in the execution of its powers and duties, and may fix their compensation, all of whom shall do such work as the Committee shall direct."

government has proved beyond a reasonable doubt both the aforementioned elements necessary to sustain a conviction under § 1319(c)(2).

Finally, a review of the various memoranda of law submitted by the defendant reflects that considerable emphasis has been placed on the fact that the Sewer Committee is under the control of a group of civic minded individuals who serve without compensation on what amounts to an "honorary board." The evidence sustains this point, but it is essentially irrelevant to the question of the guilt or innocence of the named defendant. It must again be emphasized that the legal entity known as the Sewer Committee is the defendant, and it, not the individual members of its "Board," has been found guilty of violating the aforementioned statute.

It is therefore Ordered that defendant Little Rock Sewer Committee be, and it is hereby, adjudged "guilty" of violating 33 U.S.C. § 1319(c)(2), under each of the five counts contained in the information.