**APOLLO FUEL OIL, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Docket No. 99–6101**

United States Court of Appeals, Second Circuit.

Argued: Oct. 19, 1999

Decided: Nov. 04, 1999

Frank Agostino, Hackensack, New Jersey (Calo Agostino, Hackensack, New Jersey, on the brief), for Plaintiff–Appellant.

Ellen Page Delsole, Washington, D.C. (Loretta C. Argrett, Assistant Attorney General, Bruce R. Ellisen, Tax Division, Department of Justice, Washington, D.C., on the brief), for Defendant–Appellee.

Before: KEARSE, MINER, and LEVAL, Circuit Judges.

PER CURIAM.

Plaintiff Apollo Fuel Oil ("Apollo") appeals from a judgment entered in the United States District Court for the Eastern District of New York, following a trial on consent pursuant to 28 U.S.C. § 636(c)(1) (1994) before Roanne L. Mann, *Magistrate Judge,* dismissing Apollo's complaint seeking the refund of a tax penalty imposed by the Internal Revenue Service ("IRS") pursuant to 26 U.S.C. § 6715(a)(2) (Supp. III 1997). The penalty was imposed on the ground that Apollo knowingly held tax-exempt fuel for the taxable use of fueling a highway vehicle. On appeal, Apollo contends principally that the district court erred in ruling that Apollo knew or should have known that its truck held tax-exempt fuel in its propulsion tank. Finding no merit in its contentions, we affirm substantially for the reasons stated in Magistrate Judge Mann's Findings of Fact and Conclusions of Law dated April 1, 1999 ("Decision").

Under the Internal Revenue Code ("Code"), fuel used for motor vehicle transportation is subject to an excise tax; fuel used for nontransportation purposes, such as heating, is not. *See* 26 U.S.C. §§ 4081(a)(1)(A), 4041(b) (1994), and *id.* § 4082 (Supp. III 1997). Because the composition of the taxed diesel fuel used in highway vehicles is substantially the same as that of untaxed heating oil, the Code and regulations promulgated thereunder require members of the oil industry to color the tax-exempt fuel with a red dye in order to differentiate between fuels used for taxable purposes and tax-exempt purposes. *See id.* § 4082(a); 26 C.F.R. § 48.4082–1(b) (1996). The Code further provides that

[i]f ... any dyed fuel is held for use or used by any person for a use other than a nontaxable use and such person knew, or had reason to know, that such fuel was so dyed, ... then such person shall pay a penalty in addition to the tax....

26 U.S.C. § 6715(a).

Apollo is a trucking company engaged in the transportation of both clear and red diesel fuel. Transported fuel is carried in a truck's cargo tanks; operating fuel is used in a truck's propulsion tanks. On March 7, 1996, IRS Diesel Compliance Inspector Carl Suares, who was in the process of conducting a monthly inspection of Apollo's facility, was alerted by an inspector from the United States Environmental Protection Agency, who was also on the premises, that there was red fuel in the propulsion tank of one of Apollo's trucks. Suares took a sample of the fuel; a field test indicated that the concentration of red dye was 2.3 milligrams of dye per liter. A subsequent laboratory test revealed a concentration of 3 milligrams of dye per liter, or more than 25 percent of the requisite concentration of red-dyed fuel for nontaxable use. As a result, the IRS imposed on Apollo a $1,000 penalty pursuant to § 6715(a)(2).

After paying the penalty and being denied a refund in an administrative proceeding, Apollo commenced the present refund action in the district court. Following a bench trial, the magistrate judge dismissed the complaint, finding, *inter alia,* that Apollo had not presented sufficient evidence to show that the IRS's assessment of the penalty was incorrect. On this appeal, Apollo contends principally that the magistrate judge erred in concluding that it had reason to know of the presence of red-dyed fuel in its truck's propulsion tank because Apollo presented testimony suggesting that the presence of red-dyed fuel was accidental and because its officers testified that they did not know red dye had been introduced into that tank. Apollo argues that in such circumstances the com-

pany itself cannot be subjected to the penalty. We disagree.

When the IRS has assessed a penalty, its assessment is presumptively correct, and the taxpayer who sues for a refund has the burden of persuading the factfinder by a preponderance of the evidence that the assessment is not correct. *See, e.g., Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *In re MDL–731—Tax Refund Litigation of Organizers & Promoters of Investment Plans Involving Book Properties Leasing,* 989 F.2d 1290, 1303 & n. 4 (2d. Cir.), *cert. denied,* 510 U.S. 964, 114 S.Ct. 439, 126 L.Ed.2d 373 (1993); *United States v. Lease,* 346 F.2d 696, 700 (2d Cir.1965). If the taxpayer meets his burden, the government then must persuade the factfinder, on the basis of all the evidence, that there was tax liability for which the taxpayer was responsible. *See United States v. McCombs,* 30 F.3d 310, 318 (2d Cir. 1994).

We may set aside the district court's findings of fact only if they are clearly erroneous. *See* Fed.R.Civ.P. 52(a). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *see United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 94 L.Ed. 150 (1949). Assessments of the credibility of the witnesses are peculiarly within the province of the trier of fact, and "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. Bessemer City,* 470 U.S. at 575, 105 S.Ct. 1504. Mixed findings of fact and law, such as the imputation of constructive knowledge, *see, e.g., Blakemore v. Coleman,* 701 F.2d 967, 970 (D.C.Cir.1983), are reviewable for error, not just clear error, *see generally Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 501, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

In the present case, the district court found that the testimony presented by Apollo to show that the presence of red-dyed fuel in its propulsion tank was accidental was not credible because the witness's "trial testimony and prior sworn statements [we]re riddled with inconsistencies," Decision at 7, and because the proffered explanation as to how the red-dyed fuel came to be in the tank "strain[ed] credulity," *id.* at 6. Accordingly, "[b]ased on all the evidence adduced at trial, and the reasonable inferences to be drawn therefrom," the court concluded that Apollo had "failed to refute the IRS's implicit finding that one of Apollo's employees or agents intentionally introduced dyed fuel into the propulsion tank of [the] truck." *Id.* at 12–13. Those credibility assessments were plainly within the province of the court as factfinder, and we may not second-guess them. The magistrate judge properly recognized that the taxpayer has the burden of overcoming the presumption that the IRS's penalty assessment was correct; her inference that the fueling of the propulsion tank with red-dyed fuel was intentional was permissible and hence was not clearly erroneous.

Nor do we see any error in the court's finding that Apollo as a corporate entity had reason to know of the presence of red-dyed fuel intentionally placed in its truck's propulsion tank. In general, when an agent is employed to perform certain duties for his principal and acquires knowledge material to those duties, the agent's knowledge is imputed to the principal. *See, e.g., Restatement (Second) of Agency* §§ 9(3), 268, 272, 275 (1958). Thus, "it is elementary" that a corporation "can be guilty of 'knowing' or 'willful' violations of regulatory statutes through the doctrine of *respondeat superior.*" *United States v. A*

*& P Trucking Co.*, 358 U.S. 121, 125, 79 S.Ct. 203, 3 L.Ed.2d 165 (1958).

> The business entity cannot be left free to break the law merely because its owners ... do not personally participate in the infraction. The treasury of the business may not with impunity obtain the fruits of violations which are committed knowingly by agents of the entity in the scope of their employment. Thus pressure is brought on those who own the entity to see to it that their agents abide by the law.

*Id.* at 126, 79 S.Ct. 203 (footnote omitted).

Although Apollo argued that the improper use of red-dyed fuel is prohibited by its official procedures, it did not show any way in which such use would benefit an employee, raising a strong inference that whoever introduced the red-dyed fuel into the truck's propulsion tank did so to benefit Apollo. Given the purpose of the Code to penalize the holding or use of nontaxable fuel for taxable purposes, it is entirely appropriate to impose the penalty on the entity that would profit from the forbidden holding or use of the less expensive fuel. We see no error in the district court's finding that Apollo knew or should have known that one of its employees or agents intentionally introduced dyed fuel into the propulsion tank of its truck and that the penalty was properly imposed.

Apollo advances other contentions that do not require extended discussion. Its contention that the fuel sample taken by Suares was taken in violation of its Fourth Amendment right to be free from unreasonable search and seizure is without merit. There was ample evidence that Suares was on Apollo's premises pursuant to a regulatory scheme and with Apollo's consent, and that a customary part of the inspection procedure included the taking of samples from its trucks' propulsion tanks. We see no Fourth Amendment violation. *See generally New York v. Burger*, 482 U.S. 691, 702–03, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987).

Apollo's argument that the IRS's sampling results should have been excluded from evidence because Suares did not follow all of the procedures prescribed by an IRS handbook is not properly before us. Section 7422 of the Code does not permit a taxpayer to bring suit for a refund without first filing an administrative claim for a refund. *See* 26 U.S.C. § 7422(a) (1994). Under the doctrine of variance, *see, e.g., United States v. Andrews*, 302 U.S. 517, 524, 58 S.Ct. 315, 82 L.Ed. 398 (1938); *Angle v. United States*, 996 F.2d 252, 253–54 (10th Cir.1993), this requirement means that the taxpayer must advance in the administrative proceeding any contention it wishes to pursue in court. Because Apollo did not make this argument in its administrative claim before the IRS, it is not properly pursued here.

We have considered all of Apollo's contentions that are properly before us and have found them to be without merit. The judgment of the district court is affirmed.