AERO MAYFLOWER TRANSIT COMPANY, Plaintiff, *v.* JOHN RAE et al., Defendants.

Municipal Court of the City of New York, Borough of Manhattan, November 24, 1952.

*Mac Nachamie* for plaintiff.

*Patrick H. Sullivan* for defendants.

SCHWEITZER, J. The within action is brought by the plaintiff to recover the sum of $1,786.80 which the plaintiff, a common carrier licensed and engaged in interstate commerce, claims represents certain delivery and storage charges. The action was submitted to this court on an agreed statement of facts, the essential elements of which are as follows:

Prior to June 24, 1949, the defendants resided in Beaverton, Oregon. The defendant at that time was employed by Earl Witt, Inc.; that in March, 1949, the defendant, John Rae, was advised of an impending proposed transfer to the New York City area, and in compliance with an understanding he had with his employer, said John Rae placed his household furniture in storage with this plaintiff. A short time thereafter the transfer of John Rae to New York City was confirmed and arrangements were made for the shipment of the stored furniture to Forest Hills in New York City.

Throughout the entire negotiations, from the inception of the storage to the culmination of delivery, John Rae relied solely upon his employer's promise to pay for any and all expenses incurred both in the storage of his household furniture and the delivery of same to New York City. This is evidenced by the negotiations between John Rae and his employer and the letter in evidence marked Defendants' Exhibit A. However, the order for the services for storing the merchandise in the Manning Warehouse Company dated February 23, 1949, was signed by the defendant Mary C. Rae. Prior to the authorization to the plaintiff to effect delivery of the said household goods, two

warehouse receipts were delivered to the plaintiff, each of which was signed by John Rae, thereby giving the plaintiff the authority to pick up the goods, package it and subsequently transport it to New York City. At the same time the defendants executed two shipping orders for the transportation of their goods to New York. These shipping orders or bills of lading have embodied thereon the contract terms and conditions of delivery of the merchandise and refer to each of the defendants as the shippers. Clause 7 of the aforesaid bill of lading states in substance: "That the owner or consignee shall pay the advanced tariff charges, packing and storage, if any, and all other lawful charges accruing on said property".

Undisputedly the defendants received the said household goods by two deliveries on July 7, 1949, and the delivery receipts were signed by the defendants, as consignee.

Shortly after the deliveries the plaintiff sought payment from the defendant John Rae's employer, Earl Witt, Inc., and being unable to obtain payment commenced an action in Chicago and recovered judgment against the said employer. The plaintiff was unsuccessful in effecting collection of its judgment and for the first time then demanded its charges from these defendants in a letter addressed to them on November 28, 1950.

The plaintiff contends that, regardless of the fact that they may have looked for payment to the defendant Rae's employer, it may nevertheless seek payment from the consignees, the owners of the property delivered. The defendants claim that the consignee Rae was recognized by the plaintiff throughout all of the transactions as an agent for a disclosed principal, his employer, and under the rules of agency may not be saddled with these charges.

Notwithstanding the harshness of the rule and what might appear to be a patent inequitable result, the court is nevertheless bound by section 323 of the Interstate Commerce Act. It is therein stated that: "That no common carrier  *  *  *  shall deliver any freight  *  *  *  until all tariff rates and charges thereon have been paid". (U. S. Code, tit. 49, § 323.)

An examination of the full context of the section and all of the decisions applicable thereto would indicate that the harshness of the rule is justified by the salutary purpose which prompted its enactment. The law sought to prevent unfair discriminations and undue preferences among common carriers and foisted the liability upon the consignee without regard to the fact that the consignee may have relied upon a promise made

by a third party to pay for all such charges. (*Pyramid Nat. Van Lines* v. *Goetze,* 65 A. 2d 595 [D. C.]; *Norton* v. *Shotmayer,* 72 F. Supp. 188; *New York Central R. R. Co.* v. *Federal Sugar Refining Co.,* 235 N. Y. 182; *Goodman's N. Y. & Conn. Express Corp.* v. *Imperial Crown Toy Corp.,* 71 N. Y. S. 2d 555.)

The law regarding payment is one that is created by statute and foisted upon the consignee defendants without regard to. any contract. Summarized the rule is that: '' A person who accepts, or exercised control over, the shipment impliedly agrees to pay or is liable for the full legal charges, notwithstanding he acted on the representations or understanding that the charges had been prepaid ''. (13 C. J. S., Carriers, § 316, p. 746.)

As recently as October 26, 1952, the Appellate Division of this department had occasion to consider a state of facts which presents what appears to be a harsher result. In that case the defendant accepted for delivery a certain shipment relying upon the bills of lading indicating that all charges had been '' prepaid ''. Thereafter there was ascertained the fact that there was a balance of unpaid freight charges due to the carrier. It was therein stated:

'' The claim that defendant was not the original shipper is not controlling. Defendant's obligation to pay the charges arose when it accepted the goods; in the state of facts disclosed, its title to the goods was the same as that of consignee; whatever obligations were imposed upon the original party to the contract of shipping were assumed by the defendant when it accepted the bills of lading and took possession of. the goods as owner. Section 7 of the bills of lading contains the following language: ' The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property * * *.' There is no provision that if the bill of lading is marked ' prepaid ' the consignee or owner may escape liability for the lawful freight charges although he accepts the freight shipment. In the light of the proofs in plaintiff's case and defendant's silence with regard to its true relation with the consignor and the entire transaction in question, defendant must be deemed the owner and equivalent to the consignee (see *Erie R. R. Co.* v. *H. Rosenstein, Inc.,* 249 N. Y. 241, 244, 245).'' (*Pennsylvania R. R. Co.* v. *White & Co.,* 280 App. Div. 587, 588.)

Nor can the court entertain the defense urged by the defendant John Rae that he acted merely as an agent for a disclosed principal with respect to such a shipment. The Act (§ 323) provides that a consignee agent is not responsible for such charges '' If the consignee (a) is an agent only and had no beneficial title

in the property, and (b) prior to delivery of the property he has notified the delivering carrier, in writing of the fact of such agency and the absence of beneficial title ''. There is no claim made by said defendant that he has complied with the provisions of this section and even if he had, he would not fall within the category of an agent devoid of a beneficial title in the property, since in the instant case, the consignee concededly owned the household goods which were delivered. In this connection, the pertinent language of the Appellate Division is most apposite. '' Doubtless the hardship on defendant in relying on the stamp ' prepaid ' on the bill of lading, when accepting the goods, and the failure of plaintiff, the carrier, to demand the additional freight at that time, influenced the Municipal Court and the majority of the Appellate Term in defendant's favor. But the parties are not in equity, nor is the case to be decided by application of ordinary common-law principles or by State law. Construction of the bills of lading and application of freight rates adopted by the Interstate Commerce Commission and prescribed by Congress in the public interest for interstate rail shipments, such as the one in question, presents a Federal and not a State question and we are controlled by Federal law (*Illinois Steel Co.* v. *B. & O. R. Co.*, 320 U. S. 508, 510, 511).'' (*Pennsylvania R. R. Co.* v. *White & Co., supra,* pp. 588–589.)

In view of the foregoing, the court finds that the plaintiff is entitled to judgment for the relief demanded in the complaint, in the sum of $1,786.80. A ten-day stay of execution is allowed to the defendants.