**UNITED STATES v. REID et al.**

Civ. A. No. 22416.

United States District Court
D. Maryland, Criminal Division.

Jan. 30, 1953.

254

Bernard J. Flynn, U. S. Atty., Paul C. Wolman, Asst. U. S. Atty., Baltimore, Md., James Y. Piper, Bureau of Law, I.C.C., Philadelphia, Pa., for plaintiff.

Spencer T. Money, Washington, D. C., Robert A. Gingell, Silver Spring, Md., for defendants.

CHESNUT, District Judge.

The criminal information in this case, in three separate counts, charges failures of the defendants to comply with the safety regulations promulgated by the Interstate Commerce Commission relating to motor carriers.

The Rude Carrier Corporation is a contract motor carrier acting under permits duly issued by the Interstate Commerce Commission and engaged principally in hauling explosives through numerous States. The defendant, Frank Reid, is an employee and duly appointed driver of trucks for the corporation. The alleged violations of the safety regulations occurred in the State of Maryland in connection with a carriage by tractor-trailer of a heavy load of explosives (principally dynamite) from Gibbstown in New Jersey to Spruce Pine in North Carolina on December 28, 1951, and a return trip of the tractor-trailer through Maryland on December 30, 1951, without carrying the explosives.

In counts 1 and 2 Reid is charged with failing to keep drivers' "logs" as required by the motor carrier safety regulations, and his employer, the Carrier Corporation, is charged with aiding and abetting the failure to do so. In the third count Reid is charged with violation of the safety regulations on December 28, 1951, on Route No. 1 between Baltimore and Washington at a speed greater than permitted by local laws, and crossing a railroad grade crossing intersecting the highway at such excessive speed without first having brought the vehicle to a full stop.

The defendants at first moved to dismiss the information on the ground that the alleged violations did not constitute valid regulations of the Interstate Commerce Commission and there was no sufficient legal authority for prosecution of the alleged violations. After hearing counsel, these motions were overruled without prejudice. Thereafter the case was heard on evidence submitted by the United States and by a stipulation of certain facts made by the parties. By appropriate consent the case was heard by the court without a jury. Other than the stipulation of facts the defendants offered no evidence.

The Interstate Commerce Commission Act, title 49 U.S.C.A. § 322(a), provides:

"Any person knowingly and willfully violating any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term or condition of any certificate, permit, or license, for which a penalty is not otherwise herein provided, shall, upon conviction thereof, be fined not more than $100 for the first offense and not more than $500 for any subsequent offense. Each day of such violation shall constitute a separate offense."

By title 49 U.S.C.A. § 304(a) the Commission is authorized to make regulations for the activities of motor carriers and their employees, including safety regulations. Pursuant thereto the Commission has made many such regulations. By title 39 Code of Federal Regulations, § 191.5 (a) (p. 205) it is required that a driver's log in duplicate shall be kept by every driver in the employ of a carrier, and if himself an owner driver, he shall keep such

a log. "Entries in the said driver's log shall be made by the driver and shall show the place of origin and destination of the trip, the times of reporting for duty and of going off duty, the periods of driving or operating and their work, and any other information found desirable." Section (b) requires the carrier to file monthly reports as to the number of hours on duty of drivers in excess of the hours prescribed by section 191.3. Section (c) provides that the carrier is required (commencing March 1, 1939) to keep the driver's log and to make monthly reports in accordance with certain forms, and the instructions accompanying them "which are made a part hereof". The obvious general purpose of such regulations, having regard to safety operation on the public highway, is that drivers should not be required or indeed intentionally permitted to drive motor trucks for an excessive number of hours; and the drivers' logs are to be kept by the drivers and filed with the carrier and then kept by the carrier for the purpose of enabling the agents of the Commission by checking them to see that such safety regulations were actually complied with.

The Interstate Commerce Commission by order passed May 6, 1947, effective July 1, 1947, revoked prior forms of logs required to be kept by the drivers and provided in lieu thereof a new form called "Driver's Daily Log", embracing instructions for the use of the drivers' daily log and the "method of using drivers' log", for use by drivers employed by or used by motor carriers subject to the regulations and requiring each carrier to keep or require to be kept beginning July 1, 1947 the driver's log in accordance with Form BMC 59. See also C.F.R. title 49, c. 1, § 7.59. This order was published in Vol. 12 of the Federal Register, p. 3198. The new form of driver's log and the instructions to motor carriers subject to the regulations with regard thereto was, as stated in the order, attached to the order and made a part thereof. And it was further provided by the order that "a copy of this order shall be served upon all motor carriers and that notice hereof be given to the general public by depositing a copy in the Office of the Secretary of the Commission at Washington, D. C., and by filing with the Director, Division of the Federal Register". The new form for the drivers' daily log is in the form of a graph which shows spaces for each of the 24 hours of the day and separate columns headed respectively "(1) Off-duty; (2) sleeper berth; (3) driving; (4) on duty (not driving)." The form requires the signature of the driver with respect to these several matters. The final line of the graph, which itself is again divided into the 24 hours of the day, has the caption "Remarks" and a space thereunder and a printed line reading: "Check the time and enter name of place you reported and were released from work and when and where each change of duty occurred". The specimen log referred to in and filed with the order shows diagramatically how the driver was to draw lines on the graph which, with respect to his duty, showed the hours on which he was (1) off-duty; (2) in the sleeper berth; (3) driving and (4) on duty, not driving; and the specimen log also in the blank space under the heading "Remarks" carried illustrative names of the particular places (such as Washington, Baltimore, Havre de Grace, Camden, N. J.) where changes in the status of the driver occurred on the particular trip. And in the instructions for the use of the driver's daily log (form BMC 59) under the caption of "Remarks" (which appeared on the specimen log as above mentioned) section 3 read "Check the time and write the name of the place where each change of duty occurred, such as the time and place of reporting for work, starting to drive, stop driving for over 10 minutes, started to drive again" etc., and finally "when and where released from work". There also appeared in the instructions in explaining the use of the form of the driver's daily log the following: "Under 'remarks' the checks on time markers and the entries show that the driver reported for work at Washington, D. C., at 6:00 A.M., and was on duty until he started to drive at 7:30 A.M. He drove until 9:30 A.M., when he reached Baltimore and stopped for gas and coffee. He resumed driving at Baltimore at 10:00 A.M., and

stopped for lunch at Havre de Grace at 12:30 noon. After lunch he started driving at 1:00 P.M., and continued driving until 3:00 P.M., when he stopped driving at 3:15 P.M., while crossing on the ferry. After crossing on the ferry he resumed driving from 3:15 P.M., until 4:00 P.M., when he reached Camden, N. J., when he stopped driving and stayed on duty unloading until 5:30 P.M. At 5:30 P.M. at Camden, N. J., he went off duty for the calendar day."

Pursuant to the order of June 6, 1947, a copy thereof including the specimen driver's log and the instructions for its use, were sent to various motor carriers including the Rude Corp. It is conceded that a copy was received by it.

It has been held by two separate federal trial courts that these safety regulations are valid with respect to motor carriers. See United States v. Pennsylvania Greyhound Lines, Inc., D.C.E.D.Pa., 85 F. Supp. 436, and United States v. Pennsylvania Greyhound Lines, Inc., Municipal Court, D.C., No. 471,254, decided July 13, 1949, apparently not officially reported. In the instant case, however, the principal contention of the defendants (with respect to counts 1 and 2) is that the Commission's order of 1947 is not binding on them by reason of the Administrative Procedure Act of 1946, 5 U.S.C.A. § 1001 et seq., section 3 of which provides:

"Sec. 3. Except to the extent that there is involved (1) any function of the United States requiring secrecy in the public interest or (2) any matter relating solely to the internal management of an agency—

"(a) Rules.—Every agency shall separately state and currently publish in the Federal Register (1) descriptions of its central and field organization including delegations by the agency of final authority and the established places at which, and methods whereby, the public may secure information or make submittals or requests; (2) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal or informal procedures available as well as forms and instructions as to the scope and contents of all papers, reports, or examinations; and (3) substantive rules adopted as authorized by law and statements of general policy or interpretations formulated and adopted by the agency for the guidance of the public, but not rules addressed to and served upon named persons in accordance with law. No person shall in any manner be required to resort to organization or procedure not so published."

In the instant case it appears from the driver's log as kept by the defendant Reid, his hours on duty and off-duty were recorded but he failed to record under the caption of "Remarks" the places and times when the nature of his duties with respect to changes therein were made. The importance of this additional information as to the times and places of his change of status was for the purpose of checking by agents of the Commission the distances between points and thus determining whether the information as to hours of duty or off-duty were correct and reliable, the main objective of the safety regulations with respect to drivers' hours being to see that no driver was continuously engaged in driving for excessive periods of time.

Upon consideration, I am of the opinion that the publication of the 1947 order in the Federal Register, together with the service of copy thereof including the amended specimen form of required drivers' daily log, was legally sufficient compliance with the requirements of the Administrative Procedure Act. While the specimen form and the particular instructions as to its use were not themselves printed in the Federal Register (Vol. 12, F.R. p. 3198) the order itself as printed definitely stated that the amended form and the instructions as to its use by drivers was filed with the order and made a part thereof. It is also conceded by the defendants that a copy of the whole order, including the specimen copy and instructions as to its use, was actually received

by the carrier. And there is no evidence that the defendants were either ignorant of the order or in any way confused or uncertain as to its meaning and effect. I have not been referred by counsel for the defendants to any judicial decision which would warrant me in holding that the defendants were not subject to the Interstate Commerce Commission order of 1947 merely because the specimen copy of the form (in graphic form not readily susceptible of printed inclusion in the Federal Register) was not actually included in the printed matter published in the Federal Register. It seems a quite too meticulous technicality to hold that under the circumstances the motor carrier and its driver, familiar generally at least with the industry, are not validly bound by the order of the Commission. I do not think that either of the two cases cited by counsel for the defendants, United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401, and Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10, really touch the particular question with which we are here dealing.

The brief of counsel for the Government quotes at considerable length the legislative history and official interpretation which he contends support the conclusion that the Administrative Procedure Act has been sufficiently complied with in this case, but I do not think it necessary to extend this opinion by further discussion of the point.

■ The Act of Congress providing the penalty is applicable only where the failure to comply with the regulation is knowing and wilful. The evidence warrants the finding that the driver both constructively and actually knew the requirement with which he failed to comply. And the Government's evidence, in the absence of any evidence from the defendant Reid, is sufficient to show that the failure to comply was wilful. The word "willful", of course, has different meanings and different contexts. In some cases it connotes an evil purpose but I do not think it requires that element in a case relating to important safety regulations on the public

highways, especially in the carriage of highly explosive cargo by tractor-trailer. The conscious and intentional failure to comply fully with the requirements of the driver's log seems to me to have constituted a knowing and wilful violation.

■ It was argued by counsel for the defendants that the portion of the form for the drivers' log under the caption "Remarks" was capable of being ambiguous or uncertain in meaning and therefore the defendants should not be held criminally liable for failure to comply with it. I can imagine cases where an unlettered and inexperienced driver might well be held not knowing in the omission to comply with the form especially in view of the quite small print which if read by a person of ordinarily good education would be self-explanatory. In the instant case, however, both defendants were experienced in the industry and they submitted no evidence tending to show their unfamiliarity with the subject matter. I therefore conclude that the driver is subject to the penalty prescribed by the Act. The defendant has made a motion for an acquittal of the defendant Reid, which is hereby overruled.

■ A different question is presented as to the liability of the carrier corporation on counts 1 and 2. It is charged with aiding and abetting Reid in his noncompliance with the full requirements as to keeping his daily log. I have at least a reasonable doubt as to whether it can be found in this criminal case that the carrier has aided and abetted the particular violation alleged in the first and second counts. The driver left Gibbstown, New Jersey, on December 28, 1951, and was driving through Maryland that day, and returning through Maryland after delivering his load of explosives at Spruce Pine, North Carolina, on December 30th. I will assume that he turned in the daily log when he returned but there is no evidence to show that the employer knew either before this particular trip or at any time during it that the driver would fail to comply. There is no evidence of a consistent course of conduct on the part of the employer in condoning the failure of

its drivers to properly keep the daily log. It is true that on one occasion in 1950 a District Supervisor for the Commission in New Jersey wrote a letter to the defendant calling attention to certain irregularities mentioning therein the failure to have drivers properly and completely fill out the daily log. Counsel for the United States at the trial stated that the letter was offered merely for the purpose of showing wilfulness by the corporation. But the Government offered no evidence sufficient to show that the carrier knew for a considerable length of time before this particular trip that its drivers were not sufficiently complying with the requirements; in short, there is no sufficient evidence to warrant me in finding that the carrier in effect counselled or advised or consciously permitted its drivers generally, or the driver Reid particularly, to omit compliance with the requirements. We must remember also that this is a criminal case in which we are dealing with a particular isolated charge happening on one particular round trip December 28 and 30, passing through Maryland. The venue is laid in Maryland. To make out a charge of aiding and abetting at a particular time and place requires the necessity of finding either the actual or constructive presence of the aider and abettor when the violation occurred. While this particular point has not been urged by counsel for the defendant or indeed argued by counsel for the Government, in considering the case I cannot overlook its existence, bearing in mind, of course, that in any criminal case each particular defendant is entitled to the benefit of a reasonable doubt as to whether all the essential elements of the offense charged have been established. I therefore grant the motion of the Rude Corp. for an acquittal on the evidence in this particular case.

■ The third count, against the driver Reid alone, presents no difficulty either on the law or the evidence. The charge is that on December 28, 1951 he drove the tractor-trailer at a rate of 55 to 59 miles per hour on Route No. 1 between Baltimore, Maryland, and Washington, D. C., where the maximum speed limit permissible under the Maryland statute was 50 miles an hour, and also crossed a railroad track at excessive speed without stopping. The applicable regulations clearly forbid such driving. 49 Code Federal Regulations 193.1; 193.6(a); 193.6(b) and 193.13 (a). The penalty for such violation is provided for by 49 U.S.C.A. § 322(a), above quoted.

The evidence offered by the Government was that a District Supervisor of the Interstate Commerce Commission for that territory, while driving his own car at the time, first noticed the defendant's tractor-trailer when on a noticeable up-grade, had started to pass another truck and finally succeeded in doing so. The supervisor followed the Rude tractor-trailer for about three miles until it reached the outskirts of the Town of Laurel where its speed was checked. In the meantime the driver had crossed a plainly marked railroad crossing without stopping, contrary to the regulations. The evidence clearly showed that while there were two drivers in the Rude tractor-trailer at the time, the defendant Reid was the driver of the tractor-trailer when these violations of the regulations occurred. Reid submitted no evidence in the case on his behalf. It certainly needs no extended discussion to point out the great possibilities of danger in excessive speed by a tractor-trailer on the heavily traffic congested highway of Route No. 1 between Baltimore and Washington. And when such a tractor-trailer is heavily loaded with high explosives it would seem perfectly obvious to all that great care should be exercised by the drivers of such vehicles, and when a violation of the regulations is established by the evidence the applicable sanction of the law should be firmly applied.

I therefore conclude on the whole case that the verdict as to the defendant Reid is guilty on all three counts of the information and the sentence to be imposed is a fine of $25 on each of the first and second counts, and a fine of $100 on the third count, together with the costs of the case.

■ At the hearing counsel for the defendants requested that if a verdict of

guilty should be found and a fine imposed, it was requested by the defendant Reid that his presence should not be required in court at the time as it would cause him to lose a day's pay; and counsel for the Government at the same time acceded to this request in accordance with the provisions of Fed.Rules Crim.Proc. rule 43, 18 U.S. C.A. The agreement of counsel expressed in open court may be treated as sufficient compliance with the rule providing for written consent of the defendant in such a situation.