**UNITED STATES of America,**
**Plaintiff,**

v.

**John WORMSBACHER, Jr., an individual, and Sealtite Insulation Co., Inc., a corporation, Defendants.**

**No. 64–CR–146.**

United States District Court
E. D. Wisconsin.

April 29, 1965.

Thomas R. Jones, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

John T. Porter, Madison, Wis., for defendant Sealtite Insulation Co., Inc.

GRUBB, District Judge.

The information charges the defendant, John Wormsbacher, Jr., with knowingly and willfully engaging in an interstate operation on a public highway as a for-hire carrier by motor vehicle without

718

authorization by the Interstate Commerce Commission. The information charges seven violations. The defendant, Sealtite Insulation Co., Inc., a corporation (hereinafter called "Sealtite"), is charged with knowingly and willfully aiding and abetting the defendant Wormsbacher in each such violation.

The defendant Wormsbacher pleaded guilty to three counts in the information, and the remaining four counts were dismissed as to him on the motion of the Government.

The defendant Sealtite pleaded not guilty to all seven counts. Sealtite waived trial by jury, and trial was to the court.

Section 303(c) of Title 49 U.S.C.A. provides that no person shall engage in any for-hire transportation business by motor vehicle in interstate commerce without authorization from the Interstate Commerce Commission. Section 322(a) of the same title imposes a fine upon conviction for unlawful operation. An aider and abettor is punishable as a principal. 18 U.S.C.A. § 2(a).

During the period covered by the information, there was in effect an arrangement under which Wormsbacher leased to Sealtite three tractors. This lease provided that Sealtite was to cover the vehicles with public liability and property damage insurance; that the driver was to be an employee of Sealtite and subject to its rules and direction; that the driver was to be compensated on a mileage or hourly basis depending on the circumstances; that Sealtite was to have exclusive possession, control, and use of the tractors; that Wormsbacher was to maintain the equipment and furnish all oil and fuel and other operating expenses; and that Sealtite was to compensate Wormsbacher for the rental of the vehicle on a mileage basis.

"In determining the status of a lessor of motor equipment when vehicles are used by a shipper, the courts have disregarded form, and look only to the substance. * * *" United States v. La Tuff Transfer Service, 95 F.Supp. 375, 380 (D.Minn.1950).

Thus, in the instant case, the actual *modus operandi* of the parties concerning the transportation described in the information must be examined to determine if for-hire transportation or private carriage is involved.

The Government and the defendant Sealtite stipulated that the seven trips mentioned in the information were made by vehicles leased to Sealtite by Wormsbacher on the dates indicated and between the points stated. These parties also stipulated as to the identity of the drivers involved in the seven trips. It was also stipulated that during the period covered by the information, neither defendant had any authority from the Interstate Commerce Commission to engage in for-hire transportation.

The testimony on the trial of this case is in conflict as to many aspects of the operation of the vehicles. The most credible testimony comes from Government witnesses, each of whom made trips covered in the information. Their testimony was corroborated by the testimony of Wormsbacher. The testimony of these men—Messrs. Peck, Hanson, and Nuetzel—gives a consistent picture of the nature of the operation.

The drivers were interviewed, given driving tests, and hired by Wormsbacher. The defendant Wormsbacher would call the drivers and advise them when there was a load ready for shipment at the Sealtite plant. Delivery instructions were given to the drivers at the Sealtite plant by the office girl, or, at night, the instructions were left in the office. The road expenses incurred by the drivers were paid out of an advance given them by Wormsbacher. At the conclusion of a trip, time cards, drivers' logs, and freight receipts were turned over to Wormsbacher who periodically presented them to Sealtite. In the event of a breakdown in the course of a trip, the drivers, Peck and Nuetzel, testified that they would call Wormsbacher. The vehicles involved were sometimes picked up by

the driver at Wormsbacher's home and returned there after the completion of a trip.

The drivers were paid with a Sealtite check that was given them by Wormsbacher or, on occasion, picked up in person at the Sealtite plant. Withholding taxes and social security taxes were deducted by Sealtite. The amount of pay the driver received was equal to one-third of the gross revenue that Wormsbacher was to receive from the particular trip involved. This amount was correspondingly deducted from the amount paid Wormsbacher by Sealtite. Wormsbacher's revenue was determined by a mileage-weight rate schedule for the distance to the destination and the weight of load carried. Wormsbacher received no revenue for the return trip if he did not haul a load for Sealtite. When a Wormsbacher tractor pulled a Sealtite trailer, Wormsbacher's gross revenue was reduced 20 per cent. On occasion, Wormsbacher used this equipment in hauling for others.

One driver, Peck, was discharged by Wormsbacher. The two other drivers, Nuetzel and Hanson, left their jobs and gave notice only to Wormsbacher. The drivers testified that their contacts with Sealtite personnel were minimal and related to delivery times.

■ The decision of the United States Supreme Court in United States v. Drum, 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed.2d 360 (1962), prescribes the test that is to be applied in determining whether or not a particular fact situation gives rise to for-hire carriage or private carriage within the meaning of the statutes involved here. In the Drum case, the court gave its approval to the Interstate Commerce Commission's development of a dual test. The first test is one of control, direction, and domination of the transportation, and the second test is one that looks to the substance of the transportation operation. The purpose of these tests is to determine whether or not one who has hired the instrumentalities of transportation from another has assumed in significant measure the characteristic burdens of the transportation business.

In actual practice, so far as these three tractors were concerned, Wormsbacher and not Sealtite assumed most of the burdens of the transportation business as far as the transportation described in the information is concerned.

■ The testimony of the three drivers shows that Sealtite's control, direction, and domination of the transportation were slight compared with Wormsbacher's. Further, Wormsbacher had retained substantial financial burdens in connection with the vehicles. Wormsbacher paid fuel and oil costs and was responsible for the maintenance of the vehicles. He had invested capital in the vehicles and suffered any loss from nonutilization of the equipment. He absorbed the cost of the vehicles returning empty after making a delivery for Sealtite. A deduction was made from his gross revenue for the drivers' wages. The revenue was reduced by one-fifth in the event one of Sealtite's trailers was used on a trip.

Sealtite makes an argument that this lease was approved by the State of Wisconsin Motor Vehicle Department. There is no indication that the Motor Vehicle Department ever investigated whether the lease was lived up to and what was done in actual practice.

The arrangement under which defendants Wormsbacher and Sealtite operated constituted the for-hire transportation business by motor vehicle in interstate commerce.

On October 3, 1962, and prior to the time covered by the information, the Interstate Commerce Commission advised Sealtite, by letter to its president, that its position with regard to the arrangement between Sealtite and Wormsbacher should be given serious consideration to make sure it was consistent with the applicable statutes. There was no substantial change in the arrangement after receipt of this letter.

■ The elements of "knowingly" and "willfully" as used in 49 U.S.C.A. § 322

(a) do not connote conduct done with evil purpose or criminal intent. They connote conduct which is conscious and intentional, deliberate, and voluntary. United States v. Joralemon Brothers, Inc., 174 F.Supp. 262 (E.D.N.Y.1959). See United States v. Perplies, 165 F.2d 874 (7th Cir. 1948).

See also D.C., 225 F.Supp. 723.

█    The Government has proved beyond a reasonable doubt that Sealtite knowingly and willfully aided and abetted Wormsbacher in for-hire transportation by motor vehicle in interstate commerce without securing proper authority from the Interstate Commerce Commission.

For the foregoing reasons, it is the verdict and judgment of the Court that the defendant, Sealtite Insulation Co., Inc., is guilty as charged in the information.