UNITED STATES of America, Plaintiff,

v.

GENERAL EXPRESSWAYS, INC., a corporation, Defendant.

Cr. A. 67–CR–43.

United States District Court D. Colorado.

May 9, 1967.

Lawrence M. Henry, U. S. Atty., and Robert E. Long, Asst. U. S. Atty., Denver, Colo., for plaintiff.

John S. Pfeiffer, Denver, Colo., for defendant.

MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

Defendant has moved to dismiss the information filed against it. Defendant carrier has been charged in eight counts

with violating Title 49 U.S.C. § 323. That section provides as follows:

No common carrier by motor vehicle shall deliver or relinquish possession at destination of any freight transported by it in interstate or foreign commerce until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges, including rules and regulations for weekly or monthly settlement, and to prevent unjust discrimination or undue preference or prejudice * * *.

Relevant regulations which the Interstate Commerce Commission has prescribed are found in 49 CFR §§ 188.1 to 188.5. Section 188.1 provides that:

Upon taking precautions deemed by them to be sufficient to assure payment of the tariff charges within the credit period herein specified, common carriers by motor vehicle may relinquish possession of freight in advance of the payment of the tariff charges thereon and may extend credit in the amount of such charges to those who undertake to pay them, such persons herein being called shippers, for a period of 7 days excluding Saturdays, Sundays, and legal holidays. When the freight bill covering a shipment is presented to the shipper on or before the date of delivery, the credit period shall run from the first 12 o'clock midnight following delivery of the freight.

Defendant is charged with having extended credit to shippers for a period exceeding seven days, or in other words with having failed to collect within seven days after the date of delivery of the commodity. The Government urges that the applicable penalty provision is Title 49 U.S.C. § 322(a) which prescribes a penalty for violations of the chapter where none is otherwise provided.

■ Defendant's primary contention in his motion to dismiss the information is that 49 U.S.C. § 323 does not state an offense which exposes a carrier to penal sanctions. Defendant emphasizes the fact that although the section has been in effect since 1936 there is no reported criminal prosecution. At the time of the hearing on the motion the Government suggested that there have been criminal cases, although not reported, but in the post-argument brief filed by the Government *no* criminal cases were alluded to. (It might be noted that the term "liability" employed in § 323 obviously refers only to civil liability.)

■■ Where the Court is confronted with a statute which has been on the books for 31 years, and which contains in its annotations no *criminal* cases, and where the Government has not demonstrated to the Court that there have in fact ever been any criminal prosecutions under the statute, the Court should be most reluctant to attribute to the statute penal sanctions. This is especially true where, as here, the provision has the effect to some extent of penalizing one party for the omission of another. The gravamen of the alleged offense is the extension of credit by the carrier to the shipper for more than seven days. It is apparently the Government's contention that a carrier cannot escape criminal liability under the statute by billing the shipper and even receiving the shipper's assurance that the bill would be timely paid. Thus it is the *shipper's* failure to pay which assertedly renders the *carrier* criminally liable.

One can envision the case where the shipper were insolvent and simply could not pay the bill, yet even this circumstance would seemingly be no defense to the carrier.

Since there are no reported criminal cases under the statute we must look to analogous situations. The Elkins Act credit statute, pertaining to railroad carriers, provides an apposite and compelling comparison. That statute reads in pertinent part as follows:

No carrier by railroad and no express company subject to the provisions of this chapter shall deliver or relinquish possession at destination of

any freight or express shipment transported by it until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges and to prevent unjust discrimination * * *. Title 49 U.S.C. § 3(2).

The question of whether or not a violation of the railroad credit regulations in and of itself could form the basis of a criminal prosecution was dealt with by the court in Continental Shippers' Association, Inc., v. United States, 328 F.2d 966 (9th Cir. 1964), cited by defendant. The court stated that: "A mere violation of the Interstate Commerce Act credit regulations does not necessarily violate the Elkins Act." The court also made the following pertinent remarks:

> The Elkins Act does not make the mere failure to pay bills in violation of the regulations a crime, without more. Neither does it make criminal a dialogue between creditor and debtor aimed at resolving an existing default and securing the payment of delinquent bills, without more. 328 F. 2d at 970.

In that case the non-paying shipper rather than the non-collecting carrier was being prosecuted, however the case is still instructive in the present context.

 There is no doubt that the purpose of the credit provisions of both the Elkins Act and the Act relating to motor carriers is to prevent discrimination in the credit treatment accorded shippers by carriers. See, e. g., Griffin Grocery Co. v. Pennsylvania R. Co., 93 Ga.App. 546, 92 S.E.2d 254 (1956) (railroad carriers); Aero Mayflower Transit Co. v. Rae, 203 Misc. 801, 118 N.Y.S.2d 895 (1952) (motor carriers). The motor carriers' chapter has a very specific statute punishing those carriers who have knowingly engaged in discrimination, Title 49 U.S.C. § 322(c). Thus the purpose of the credit statute can be effectuated by a prosecution for knowing discrimination under § 322(c).

It may well be that an information based upon the violation of § 323 could support a criminal prosecution if it were further charged that the extension of credit was designed to accomplish a discrimination among shippers. No discrimination is alleged in the present information, however. Indeed the uncontroverted fact that defendant billed the shippers in due time would tend to negate any inference of discrimination.

We conclude that the mere failure to receive payment from the shipper within seven days after delivery does *not* expose the carrier to criminal liability. For this reason the motion to dismiss the information is well taken. It is, therefore,

Ordered that defendant's motion to dismiss the information be and hereby is granted.