**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Leo J. STERNWEIS, Defendant.**

**No. 66–CR–52.**

United States District Court
W. D. Wisconsin.

Jan. 22, 1968.

Edmund A. Nix, U. S. Atty., Thomas C. Eckerle, Asst. U. S. Atty., Madison, Wis., for plaintiff.

Frank L. Nikolay, of Nikolay, Jensen & Scott, Colby, Wis., for defendant.

JAMES E. DOYLE, District Judge.

An information in eleven counts herein charges that during the first quarter of 1966 the defendant Sternweis knowingly and wilfully engaged in the business of a for-hire motor carrier in interstate commerce, and on eleven occasions transported property on public highways for compensation without an Interstate Commerce Commission (hereinafter Commission) permit or certificate authorizing him so to do, in violation of 49 U.S.C. §§ 303(c) and 322(a), and it charges that the defendant Eatmore Products Co., Inc., aided and abetted Sternweis in these violations. The information further charges that both defendants had been convicted in 1960 of violation of 49 U.S.C. § 322(a). Defendants pleaded not guilty. Defendant Eatmore later changed its plea to counts 1, 2, 3 and 4 to a plea of no contest, and has been adjudged guilty as to counts 1, 2, 3 and 4; counts 5, 6, 7, 8, 9, 10 and 11 were thereupon dismissed as to defendant Eatmore.

Trial as to defendant Sternweis on all 11 counts was had to the court, defendant having waived trial by jury, and briefs have been filed. At the close of the plaintiff's case and again at the close of the defendant's case, the defendant Sternweis moved for a judgment of acquittal; the court took both motions under advisement. Upon the basis of the entire record herein, I make the findings stated below and reach the conclusions expressed herein.

The eleven trips described in the information did occur; they did involve in-

terstate commerce, namely, the transportation of beer by motor vehicle over public highways from St. Louis, Missouri, to Wisconsin Rapids, Wisconsin, and to Stevens Point, Wisconsin; defendant Sternweis possessed no certificate from the Commission to perform such transportation as a common carrier or contract carrier; defendant Sternweis received $215 from Eatmore for each such round trip; a driver, Robert Boardman, employed by Eatmore, received from Eatmore $55 for each such round trip, in addition to workmen's compensation coverage by Eatmore.

During the period in which the eleven trips occurred there was in existence a one-year written lease (Exhibit 1) to which defendant Sternweis and defendant Eatmore were parties, dated July 7, 1965. The said lease designated defendant Sternweis as lessor and defendant Eatmore as lessee; it covered a certain described truck-tractor; Eatmore was to pay to Sternweis weekly "as rent for the said motor vehicle" 30 cents for each mile it was operated by Eatmore. The tractor was to be under the exclusive direction and control of Eatmore and was to be operated only by Eatmore's employee drivers. Sternweis was to pay all taxes and licenses on the vehicle, was to keep it in good operating condition and repair and equipped with adequate tires. Eatmore was to pay all costs of operation such as gasoline and oil. Eatmore was to hold Sternweis harmless from personal injury and property damage claims arising out of the operation of the vehicle by Eatmore, and from damage or loss to the vehicle itself by fire and other hazards.

In practice the terms of the lease were departed from in the following respects:

(a) The approximate length of the round trip from Wisconsin Rapids to St. Louis was 950 miles. At 30 cents per mile, this would total $285, but the parties agreed to a payment of $215 per trip from Eatmore to Sternweis, and $215 was the sum actually paid.

(b) Sternweis provided the gasoline and oil. It was provided by Sternweis directly in Wisconsin. At St. Louis, at Sternweis' direction, the driver obtained gasoline and oil at a station designated by Sternweis and charged it to Sternweis.

In other respects, especially those relating to the direction and control of the vehicle and its operator, the terms of the lease were observed: Eatmore dictated the times at which trips were to be made, received the driver's logs, kept the driver's medical certificate in its possession, and gave the driver any detailed instructions which were necessary. Also, Eatmore maintained liability insurance on the tractor.

(On June 14, 1960, in this court, in an earlier action, Sternweis had been adjudged guilty on each count of a ten count information charging him with operation as a motor common carrier without a Commission certificate, in violation of 49 U.S.C. § 306(a) (1)).

I conclude that the tractor and its driver, at all times covered by the information, were under the control and direction of the shipper, Eatmore, and not under the control of the lessor, defendant Sternweis. In the total pattern of control and direction, Sternweis' direction to the driver to obtain gasoline and oil at a certain station in St. Louis was insignificant.

United States v. Drum, 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed.2d 360 (1962), involved an investigation initiated by the Commission under 49 U.S.C. § 304(c). The Commission held that the lessors of certain motor vehicles were contract carriers within 49 U.S.C. § 303(a) (15) and subject to permit requirements, and it entered a cease and desist order. The lessors persuaded a three-judge court to set aside the Commission's cease and desist order, 193 F.Supp. 275 (W.D.Okl.), but the Supreme Court reversed, holding (368 U.S., at 376, 82 S.Ct. 408, at 411) that there was no occasion to disturb the conclusion reached by the Commission because its order did not "violate

the coherence of the body of administrative and judicial precedents so far developed in this area."

Although the Commission had found that the lessee (comparable to Eatmore here) had insufficient "right to control, direct, and dominate" the transportation to permit it to qualify as a private shipper and to permit the lessors (comparable to Sternweis here) to escape classification as common carriers, the decision of the three-judge court to the contrary was not appealed to the Supreme Court. 368 U.S., at 381, 82 S.Ct. 408. The Supreme Court decided, however, that the outcome did not turn exclusively on the issue of "control". It approved a second test applied by the Commission, namely (381, 82 S.Ct. 413), whether "in substance, [the lessors were] engaged in the business of * * * transportation of property * * * for hire." It observed (385, 82 S.Ct. 416) that the Commission had refused to allow the lessee the status of a private carrier "because of its belief that financial risks are a significant burden of transportation, and its belief that such risks had been shifted by [the lessee] to the [lessors] to an extent which rendered the sanctioning of the operation as private carriage a departure from the statutory design. We think that such conclusions were well within the range of the responsibility Congress assigned to the Commission." Earlier in its opinion (379–380, 82 S.Ct. 413), the Court had noted the "financial risks" falling upon the lessors and which presumably were thought a sufficiently "significant burden" upon them to render them common carriers:

(1) "The large capital investment in the tractors and the risk of their premature depreciation or. catastrophic loss, was borne by the [lessors]."

(2) "The [lessors] * * * stood the risk of a rise in variable costs such as fuel, repairs and maintenance of the tractors in good operating condition, and living expenses * * *."

(3) "[The lessee] was able to divest itself, to a significant extent, of the risk of non-utilization of high-priced equipment. The [lessors] received neither rental payments nor wages when their tractors were not used and they did not drive."

With respect to "the large capital investment in the tractors and the risk of their premature depreciation", it is difficult to avoid the force of Mr. Justice Harlan's comment in dissent (392, 82 S.Ct. 420): This factor "is the normal concomitant of any equipment rental; its presence cannot serve to change the character of a relationship * * *." Of course, I am bound by the holding of the Court in *Drum*, but Mr. Justice Harlan's comment emboldens me to conclude that the factors of large capital investment and risk of premature depreciation, alone, are not controlling. With respect to the risk of "catastrophic loss" of the equipment in the present case, the lease required Eatmore to hold Sternweis harmless "from damage and loss to and of such vehicle caused by fire, theft, tornado and collision during the term thereof"; there is no evidence that Eatmore failed to meet this obligation during the term of the lease.

With respect to "the risk of a rise in variable costs such as fuel, repairs and maintenance of the tractors in good operating condition", this risk was clearly assumed by Sternweis in the case at hand. With respect to "the risk of a rise in variable costs such as * * * living expenses", this risk was clearly not assumed by Sternweis here. In *Drum* the lessors drove trucks, usually their own, as employees of the lessee (379, 82 S.Ct. 413); in the present case, the operator was not the lessor and the living expenses of the operator were not borne by the lessor.

With respect to "the risk of non-utilization of high-priced equipment", this risk was borne here by Sternweis. There was no guarantee by Eatmore that the tractor would be operated by it for any minimum mileage during the term of the lease. With respect to whether the les-

sors (here a single lessor) "received neither rental payments nor wages when their tractors were not used and they did not drive", it is true that Sternweis received no rental payment when his tractor was not used, but the balance of the statement is inapplicable here.

Thus, in order to convict defendant Sternweis here, it is necessary to hold that, in the absence of any prior administrative inquiry or determination concerning the facts of this particular case, a lessor is a common carrier, within the meaning of the act, even though he relinquishes the direction and control of the vehicle and its operation to the lessee, so long as the lessor continues to maintain his capital investment in the vehicle, bears the risk of its premature depreciation, bears the risk of an increase (and the possible windfall of a decrease) in the costs of fuel, repairs, and maintenance, and bears the risk of non-utilization of the equipment. I decline so to hold. I do not believe that the rationale of the Supreme Court in *Drum*, in which it declined to overturn an administrative determination in a non-criminal case, may fairly be lifted *in toto* for application in a criminal prosecution in which the defendant's knowing and wilful violation must be proved beyond a reasonable doubt.

In United States v. Wormsbacher, 240 F.Supp. 716 (E.D.Wis., 1965), the court found that the lessee's control, direction, and domination of the transportation were slight compared to the lessor's. In United States v. Lowther Trucking Company, 229 F.Supp. 812 (N.D.Ala., 1964), both the elements of control and the division of financial burdens were tipped far more to the lessor than they are here; this is emphatically true as well in United States v. La Tuff Transfer Service, 95 F.Supp. 375 (D.Minn., 1950). No other criminal convictions have been cited by plaintiff here.

The defendant's motion for a judgment of acquittal, made at the close of plaintiff's case, is hereby granted, and a judgment of acquittal is hereby granted.