**UNITED STATES of America, Plaintiff,**

v.

**INFINGER TRANSPORTATION COMPANY, Inc., Defendant.**

**No. 70-155.**

United States District Court, D. South Carolina, Charleston Division.

Heard July 6, 1970.

Decided Aug. 17, 1970.

Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., for plaintiff.

Falcon B. Hawkins, Charleston, S. C., for defendant.

HEMPHILL, District Judge.

A criminal information was filed herein by the Government on June 17, 1970, was called for arraignment in Charleston, South Carolina, on July 6, 1970. Upon arraignment defendant, by counsel, filed a motion to dismiss the information on the ground that the information failed to state sufficient facts to constitute an offense against the United States. Oral Arguments on the motion were heard on July 9, 1970.

The court has now considered arguments of counsel as to the contentions of the parties, the applicable statutes, and the regulations promulgated by the Interstate Commerce Commission and the case law.

Section 223 of the Interstate Commerce Act (49 U.S.C. § 323) provides in part as follows:

> No common carrier by motor vehicle shall deliver or relinquish possession at destination of any freight transported by it in interstate or foreign commerce until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges, including rules and regulations for weekly or monthly settlement, and to prevent unjust discrimination or undue preference or prejudice. * * *

Under the authority of the above quoted statute the Interstate Commerce Commission promulgated rules permitting extension of credit by common carriers to shippers under certain circumstances. This regulation is found in 49 Code of Federal Regulations 1322.1 and as pertinent is as follows:

> Upon taking precautions deemed by them to be sufficient to assure payment of the tariff charges within the credit period herein specified, common carriers by motor vehicle may relinquish possession of freight in advance of the payment of the tariff charges thereon and may extend credit in the amount of such charges to those who undertake to pay them, such persons herein being called shippers, for a period of 7 days, excluding Saturdays, Sundays, and legal holidays. * * *

The penalty provisions of the Interstate Commerce Act upon which the Government relies in this case are found in Section 222(a) of the Interstate Commerce Act (49 U.S.C. § 322(a)) for a violation of any provision of Part II of said Act or any regulation promulgated thereunder is as follows:

> Any person knowingly and wilfully violating any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any

term or condition of any certificate, permit, or license, for which a penalty is not otherwise herein provided, shall, upon conviction thereof, be fined not less than $100 nor more than $500 for the first offense and not less than $200 nor more than $500 for any subsequent offense. Each day of such violation shall constitute a separate offense.

The information contained ten counts, each of which bore the same language as to the charge, except for dates and amounts of the uncollected freight charges. Each charged that defendant, "notwithstanding the fact that it had previously on numerous occasions extended credit for payment of tariff charges to Humble Oil & Refining Company, who had on those occasions undertaken and agreed to pay such tariff charges but failed to make timely payment as required by law, did thereafter *knowingly and willfully* extend credit" to Humble Oil & Refining Company [emphasis added]. Typical of the ten counts is Count I which reads in full:

On or about the 4th day of April, 1969, in the State and District of South Carolina, Infinger Transportation Company, Inc., defendant, a corporation, a common carrier by motor vehicle, notwithstanding the fact that it had previously on numerous occasions extended credit for payment of tariff charges to Humble Oil & Refining Company, who had on those occasions undertaken and agreed to pay such tariff charges but failed to make timely payment as required by law, did thereafter knowingly and willfully extend credit for the payment of tariff charges in the amount of $193.14 to Humber [sic] Oil & Refining Company for more than seven days, excluding Saturdays, Sundays and legal holidays, in that on or about the 4th day of April, 1969, said defendant did transport for said Humble Oil & Refining Company, a shipment of freight, consisting of asphalt consigned by said Humble Oil & Refining Company to A. R. Thompson Con-

struction, Inc., consignee, by motor vehicle on public highways from Charleston, South Carolina, to Rutherfordton, North Carolina, and on said 4th day of April, 1969, did relinquish possession of said freight at said Rutherfordton, North Carolina to said consignee without collecting the tariff charges from said Humble Oil & Refining Company, who by agreement made previous to the transportation of said freight undertook and agreed to pay such tariff charges, and, thus, in truth and in fact, extended credit well knowing that the tariff charge would not be paid within the specified credit period; and, although said defendant thereafter on April 15, 1969, presented to said Humble Oil & Refining Company a freight bill covering said shipment for transportation charges of $193.14, the lawful tariff charges for such transportation, the said defendant did fail to collect such charges from said Humble Oil & Refining Company, those charges remaining uncollected up to and including the 12th day of May, 1969.

(49 CFR 1322.1; 49 U.S.C. § 323; 49 U.S.C. § 322(a)).

Defendant cites and relies on the fine reasoning and favorable conclusion reached in United States v. General Expressways, Inc., 270 F.Supp. 115 (D.C. Colo.1967). This court has examined with care and appreciation and finds no disagreement with the reasoning nor ruling in light of the record apparently developed in that forum. There the court dismissed the information on the grounds "that the mere failure to receive payment from the shipper within seven days after delivery does not expose the carrier to criminal liability." A reading of the criminal information in the case under consideration, however, shows that there is much more to the charge than merely failing to receive payment. Specifically the defendant is charged with extending credit knowing that the same would not be paid within the required period, and that in fact such charges were not paid within the

required period. There the court was apparently not advised that there had been numerous prior criminal convictions under the same statutes and regulations and stated, "and where the Government has not demonstrated to the court that there have in fact ever been any criminal prosecutions under the statute, the Court should be most reluctant to attribute to the statute penal sanctions."

This court is advised and here concludes that there have been criminal prosecutions under the statutes and regulations hereinabove cited both before and after the *General Expressways* case, and that the language and allegations in such informations were similar or identical to the language here. In this regard reference is made to the following cases which resulted in convictions: United States v. Sharpe Motor Lines, Inc., Criminal No. 1120, Western District of North Carolina (April 20, 1965); United States v. Gaines Motor Lines, Inc., Criminal No. 1224, Western District of North Carolina (August 9, 1966); United States v. Pike Transfer Company, Inc., Criminal No. 1816, Northern District of Georgia (January 7, 1966); United States v. Southeastern Freight Lines, Inc.,[1] Criminal No. 66–279, District of South Carolina (October 10, 1966); United States v. Eastern Motor Lines, Inc., Criminal No. 59–67–CR, Raleigh Division, Eastern District of North Carolina (January 20, 1969); and United States v. Hemingway Transport, Inc., Criminal No. 68–4–M, District of Massachusetts (1968). The court is further advised that with respect to the *Sharpe Motor Lines* and *Eastern Motor Lines* cases the legal sufficiency of the informations were attacked and in both instances motions for dismissal were denied.

■ Initially, 49 U.S.C. § 322(a), the penal section, limits the criminal penalty to any person *knowingly* and *willfully* [emphasis added] violating. Following this language is the inclusive application of the penalty to those so violating "any provision of this chapter." Sections 322 and 323 of Title 49 are parts of Chapter 8, Interstate Commerce Act, Part II; Motor Carriers. The chapter includes sections 301–327 of Title 49 [Transportation], United States Code. 49 U.S.C. § 301 provides:

This chapter may be cited as Part II of the Interstate Commerce Act.

Section 303(a) (1) defines:

(1) The term "person" means any individual, firm, copartnership, corporation, company, association, or joint-stock association; and includes any trustee, receiver, assignee, or personal representative thereof.

Not essential to this determination, but critical when proof of the alleged crime is offered is a definition (or interpretation) of the terms knowingly and willingly. The term knowingly as a vital element of proof of a failure or omission to act has been frequently defined. See United States v. A & P Trucking Co., 358 U.S. 121, 79 S.Ct. 203, 3 L.Ed.2d 165 (1958); Morissette v. United States, 342 U.S. 246, 250, 252, 264, 72 S.Ct. 240, 243, 96 L.Ed. 288; Screws v. United States, 325 U.S. 91, 101–107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) and Hartzel v. United States, 322 U.S. 680, 686, 64 S.Ct. 1233, 1236, 88 L.Ed. 1534 (1944). Likewise, willfully, as applied to a failure or omission to act has been subject to frequent attention and definition. See United States v. A & P Trucking Co., supra; Heikkinen v. United States, 355 U.S. 273, 78 S.Ct. 299, 2 L.Ed.2d 264 (1958); Morissette v. United States, supra; Screws v. United States, supra; Hartzel v. United States, supra; and Murdock v. United States, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933). Specific definitions and applications of the two terms used jointly may be found in United States v. John Henricks, Inc., 388 F.2d 677 (7th Cir. 1968); Steere Tank Lines, Inc., v. United States, 330

---

I. Before Hemphill, District Judge at Greenville, S. C., October 10, 1966. Defendant pled guilty and was sentenced.

F.2d 719 (5th Cir. 1963); United States v. Joralemon Bros. Inc., 174 F.Supp. 262 (D.C.N.Y.1959), and United States v. Reid, 110 F.Supp. 253 (D.C.Md.1953). Suffice it to note that no connotation of moral turpitude or evil motive is to be inferred from the use of the term in the statute. United States v. E. Brooke Matlack, Inc., 149 F.Supp. 814 (D.C.Md. 1957).

A violation of 49 U.S.C. § 323 constitutes a crime whenever the offender willfully and knowingly does what that section of the act forbids. Necessary to such an intepretation is the reading of 49 U.S.C. § 322(a) in conjunction with 49 U.S.C. § 323. Section 322 applies equally to the entire spectrum of Part II of the Interstate Commerce Act. It is not only the penal section for purposes of criminal prosecution but provides for civil action [2] for fines, sets the amounts, directs as to service of process and payment of costs and expenses.

The indictment under attack here correctly includes the requisites necessary to criminal prosecution. The violation of 49 U.S.C. § 323 and the rules promulgated thereunder [3] constitute a crime within the ambit of 49 U.S.C. § 322(a). The statute under consideration, Section 323, is of the malum prohibitum class, but proof of both knowledge and willfulness is required. See Steere Tank Lines, Inc. v. United States, supra.

The marriage of Section 322 to other sections of Part II of the Interstate Commerce Act is recognized in United States v. Wormsbacher, 240 F.Supp. 716 (E.D.Wis.1965), where defendant was charged with knowingly and willfully aiding and abetting another defendant in knowingly and willfully engaging as for-hire carrier by motor vehicle without authorization by the Interstate Commerce Commission in violation of 49 U. S.C. § 303(c). The court interpreted:

Section 303(c) of Title 49 U.S.C.A. provides that no person shall engage in any for-hire transportation business by motor vehicle in interstate commerce without authorization from the Interstate Commerce Commission. Section 322(a) of the same title imposes a fine upon conviction for unlawful operation. An aider and abettor is punishable as a principal. 18 U.S.C.A. § 2(a).

A review of the wording of Section 322(a) confirms its inclusive and broad scope.

United States v. Krapf, 180 F.Supp. 886 (D.C.N.J.1961), affirmed 285 F.2d 647 (3rd Cir.), is authority for the interpretation that violation of Chapter II of the Interstate Commerce Act constitutes a federal offense and is indictable.[4] At page 890 of the district court opinion one finds:

Indeed it has been repeatedly held that violations of Section 322(a), supra, constitute convictions of a criminal nature. United States v. Chadwick, D.C.E.D.Pa.1940, 39 F.Supp. 204; United States v. Great Eastern Lines, D.C.Va.1950, 89 F.Supp. 839; United States v. Gunn, D.C.W.D.Ark. 1950, 97 F.Supp. 476. Not only so, but the history of Section 322(a) itself shows that what Congress intended by its enactment thereof was to impose sanctions of a criminal nature. See the allusions thereto in Senate Report 82, February 25, 1949, House Report No. 971, July 6, 1949, both to accompany S. 256, where, under Section 15 of such report, the Section in question is referred to as being 'punishable by fine in a criminal proceeding.' U.S.Code Congressional Service, Vol. 2, 81st Cong., 1st Sess., 1949, p. 1645. See also the similar allusions to the same statute, as amended, U.S.Code Congressional and Administrative News, Vol. 2, 85th Cong., 1st Sess., 1957, p. 1470.

This court finds no disagreement with the ruling in United States v. General

---

2. 49 U.S.C. § 322(h).

3. Supra.

4. Rule 7(a) Federal Rules provides for prosecution by information of certain crimes, and is inclusive as to 49 U.S.C. § 322(a).

Expressways, Inc., supra. Indeed, if the Government, in the case now under consideration, had attempted to prosecute for a mere failure to receive payment or collect the tariff, the information would be defective and the motion of Infinger would be granted. The Government has written into the counts of the indictment the language of Section 323 and the language of Section 322(a), as pointed out in *Expressways:*

> There is no doubt that the purpose of the credit provisions of both the Elkins Act and the Act relating to motor carriers is to prevent discrimination in the credit treatment accorded shippers by carriers. See, e. g., Griffin Grocery Co. v. Pennsylvania R. Co., 93 Ga.App. 546, 92 S.E.2d 254 (1956) (railroad carriers); Aero Mayflower Transit Co. v. Rae, 203 Misc. 801, 118 N.Y.S.2d 895 (1952) (motor carriers). The motor carriers' chapter has a very specific statute punishing those carriers who have knowingly engaged in discrimination, Title 49 U.S.C. § 322(c). Thus the purpose of the credit statute can be effectuated by a prosecution for knowing discrimination under § 322(c).

It may well be that an information based upon the violation of § 323 could support a criminal prosecution if it were further charged that the extension of credit was designed to accomplish a discrimination among shippers. No discrimination is alleged in the present information, however. Indeed the uncontroverted fact that defendant billed the shippers in due time would tend to negate any inference of discrimination.

Finally, the language of Section 323, by its omissions, convinces that it is interrelated with other sections of Chapter II of the Act. Neither criminal nor civil penalty is spelled out in Section 323. The only plausible explanation lies in relating the section to the penal provisions, criminal and civil, contained in Section 322. To interpret Section 323 as a statute the violation of which could be pursued only by civil action would effectively destroy its usefulness. Enforcement attempts would be toothless. Who would sue the carrier? The debtor would not ask a court to make him pay his own bill. A shipper would tell the carrier to attend to its own credit problem. Endless petty lawsuits and certain discrimination would result. The correct answer, the only logical answer, the congressional intent implemented, are realized by application of Section 322 to allow criminal prosecution.

 The information will support a criminal prosecution. The motion to dismiss the information is denied.

And it is so ordered.